Supreme Council of American Legion of Honor *vs.* Green.

(Decided 12th June, 1889.)

---

SUPREME COUNCIL OF AMERICAN LEGION OF HONOR
*vs.* ELIZABETH A. GREEN.

*Beneficial Society—Action against Society by a Beneficiary— False statement—Foreign Statute—Construction of Foreign Statute in this State—Estoppel.*

One of the objects of a beneficial corporation as set forth in its constitution was "to establish a benefit fund, from which, on satisfactory evidence of the death of a beneficial member of the order who has complied with all its lawful requirements, a sum not exceeding five thousand dollars shall be paid to the family, orphans, or dependents, as the member may direct." By a statute of Massachusetts, under which said corporation was formed, a corporation organized for the above purpose "may for the purpose of assisting the widows, orphans, or other relatives of deceased members, or any persons dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto." A member of said corporation took out as such a certificate insuring his life for the benefit of one who was named in the application as "E. A. G. my niece," and the application contained a subsequent clause consenting and

Supreme Council of American Legion of Honor *vs.* Green.

agreeing that any untrue or fraudulent statement or any conceal-
ment of facts in the application, should forfeit the rights of the
applicant and his "family or dependents to all privileges therein.'"
In an action in this State instituted by E. A. G. to recover upon
said contract, it was HELD:

1st.　That the Courts of Massachusetts having decided what said
statute of Massachusetts authorized to be done under it, those deci-
sions were controlling as to the effect and meaning of the statute,
and must be followed in this State as making a part of the law of
the State, no matter whether they were in harmony with decisions
of other States upon somewhat similar statutes or not.

2nd.　That under said decisions the statement in the application
that the plaintiff was a niece of the insured, was material, and it
being conceeded that there was no kinship between them, such
false statement in view of the warranty of its truth contained in
the application defeated the action.

3rd.　That an agreement between said parties to act towards
each other as uncle and niece could not have the effect to make
them such, and bring the plaintiff within the class named in the
statute as "relatives," so as to make her a qualified beneficiary
to take under the statute as a relative.

4th.　That the defendant was not estopped from making this
defence by the fact that one of its officers who witnessed the
application, but was not charged with the duty of ascertaining
the qualification of a beneficiary named by the insured had
heard before that time that the plaintiff was not the niece of the
insured, but had no personal knowledge on the subject, and testi-
fied that he did not recollect having paid any attention to the
statement in the application that the plaintiff was the niece of
the insured.

APPEAL from the Court of Common Pleas.

The case is sufficiently stated in the opinion of the
Court.

The cause was argued before ALVEY, C. J., STONE,
MILLER, IRVING, BRYAN, and MCSHERRY, J.

*John H. Handy,* for the appellant.

Supreme Council of American Legion of Honor *vs.* Green.

*Thomas R. Clendinen*, for the appellee.

IRVING, J., delivered the opinion of the Court.

This suit was instituted by the appellee as plaintiff to recover upon a contract of insurance effected by one Thomas H. Evans upon his own life, for the sum of three thousand dollars, for the benefit of the plaintiff. The insured, Thomas H. Evans, was a charter member of Reliance Council, No. 1069, of "American Legion of Honor," which was organized in December, 1882; and as such member he had taken out a certificate insuring his life for the benefit of the plaintiff in this suit, who is named in the application as "Elizabeth A. Green, my niece." The appellant is a corporation chartered under the laws of Massachusetts, which are found in the Revised Statutes of that State, ch. 115, and section 8, as amended by the Act of 1882, ch. 195, contains the provisions under which this controversy arises.

That section reads as follows: "A corporation, organized for any purpose mentioned in section two, may, for the purpose of assisting the widows, orphans or other relations of deceased members, or any persons dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto, and such fund so held shall not be liable to attachment by trustee or other process; and associations may be formed under this chapter for the purpose of rendering assistance to such persons in the manner herein specified."

In the 5th section of Article 2 of the Constitution of the Supreme Council of the Legion of Honor the object of the order, so far as it affects this case, is declared to be "To establish a benefit fund, from which, on satisfactory evidence of the death of a beneficial member of the

order, who has complied with all its lawful requirements, a sum not exceeding five thousand dollars shall be paid to the family, orphans, or dependents, as the member may direct."

The payment of this insurance money, (the insured having died), is resisted by the appellant upon the contention that the appellee does not belong to the classes or any one of them whom the corporation designed to assist or benefit; or which the statute of Massachusetts authorized to be provided for. It is also resisted on the ground that in his application for membership and insurance, the insured described the plaintiff (the beneficiary) as "my niece," whereas she was not his niece, and was in no degree related to him. This representation being untrue, it is contended, that, under a subsequent clause of the application, there was a forfeiture of rights under the contract. That clause is as follows: "I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts in this application, or my suspension or expulsion from, or voluntarily severing my connection with, the order, shall forfeit the rights of myself and my family or dependents to all privileges therein."

What the statute of Massachusetts authorizes to be done under it has been settled by the decisions of Massachusetts' Courts, and those decisions are controlling as to the effect and meaning of the statute, and we should follow them as making a part of the law of the State, no matter whether they are entirely in harmony with decisions of other States upon somewhat similar statutes or not. In *American Legion of Honor vs. Perry*, 140 *Mass.*, 589, it was most distinctly decided that the classes of persons intended to be benefited by the statute are plainly and expressly designated in the statute, and that no person not falling within that designation could be provided for by any corporation holding its charter under

the laws of that State. This decision was made with reference to the appellant in this case. The suitor in that case was engaged to be married to the insured, but was not allowed to recover because she was not embraced within the classes the law allowed insurance to be effected for. She was not the widow, the orphan, a relative or a dependent in the sense of the statute. All subsequent decisions of that State recognize this as the law of that State. *Skillings vs. Mass. Benefit Association,* 146 *Mass.,* 217. In order to recover, the insured knew that the appellee must be found to meet the description of some one of the classes designated in the Act, and in order to meet that requirement she was named by the insured in his application as his niece, which declared her a relative, and therefore a qualified beneficiary, whether a dependent or not. Now the utmost good faith is required in such cases, and the applicant so knew, for he agreed in his application that any untruthful statement, or any fraudulent statement, or any concealment of facts should forfeit all rights under the insurance he was effecting. The association was entitled to know the facts that they might agree or refuse to have the applicant a member and an associate in the society or not, and to allow the beneficiary named to be the recipient of its provisions for aid as it might decide. It is contended that improper relations existed between the insured and the beneficiary named, to wit, the appellee, and that the designation of her as applicant's "*niece*" was a cover to conceal the true relation. The jury seem to have found that immoral relations did not exist, and of course that question is not before us. Whatever may have been the motive of the deceased for stating the plaintiff, the beneficiary, to be his niece, when she was not, is wholly immaterial to the question for decision. A relationship was stated to exist, which on its face placed the beneficiary named

within one of the classes provided for by the corporation, and allowed by the statute of Massachusetts; and the corporation was called on to look no further, but might rely on the warranty of its truth, and the agreement to forfeit if falsely stated. It is not pretended there was any kinship, in fact, between the parties. It is conceded that there was not. The plaintiff testifies that there was not any relationship by blood, but says she called him uncle, and he treated her as a niece by mutual understanding. It is very clear that their agreement to act towards each other as uncle and niece could not have the effect to make them such, and bring her within the class named in the statute as "relatives," so as to make her a qualified beneficiary to take under the statute as a *relative.* The question of dependency we are not now considering. She is not named in the application or in the policy, (or certificate,) as a dependent, but as *"niece,"* and it was as *"niece"* she was *intended* to take; otherwise she would not have been so described. The relation of the parties to each other was certainly very peculiar, and on the theory of entire purity the deceased was marvellously generous; but whether she could be regarded as a dependent within the meaning of the society's constitution and the statute of Massachusetts would admit, at least, of serious doubts, if the case turned on that point. We think the false statement of the insured that the appellee was his *"niece,"* so manifestly material, as it declared her a relative and qualified beneficiary, in view of the warranty of its truth, and agreement to forfeit rights if false, should defeat this action. This is according to sound principle. *Bliss on Life Ins.,* secs. 47-48-82.

Two cases only have been cited as maintaining a contrary view, and establishing that an incorrect statement of relationship will not avoid the contract; but a careful examination of those cases discloses such material differ-

ences in the facts, the questions involved, and the law under which the decisions were made, that they are not adverse to our view. In the case of *Equitable Life Assurance Society, &c. vs. Paterson*, 41 *Ga.*, 338, insurance was taken out in favor of a woman designated as the wife of the insured. She was married to him, lived with him and was reputed as his wife till he died. Payment was resisted on the ground that there was an entire want of insurable interest, because it was alleged she was not the lawful wife of the deceased, her lawful husband being still alive. By the statutes of Georgia, sections 2,671 and 2,672, it is provided that variation from the truth in anything affecting the risk shall avoid the policy, but that if a party states *bona fide* what he believes to be the truth, the policy shall not be void though he was mistaken. This is the substance of the statute. The lower Court instructed the jury that the failure to state the true relations of the parties did not avoid the policy. The Supreme Court reversed that ruling and held it would avoid, unless the insured *bona fide* believed his statement to be true. The Court said the true inquiry under the statute was whether the statement was knowingly false, that is, whether the insured knew when he made the statement that his so-called wife's husband was living, and that the jury should have been told that if the insured did not know when he made the statement that the husband was living he was acting *bona fide* and the contract was not avoided, but that if he did know that fact, and kept back part of the truth, then the policy was void. This case sustains rather than conflicts with our view. There the statute supplied the rule, which the warranty and agreement in this case does, to govern the case.

The other case relied on by appellee's counsel is *Durian vs. The Central Verein of the Hermann's Soehnne*, 7 *Daly*, 168. This was a case in the Court of Common

Pleas of the city and county of New York, and it is not, therefore, a binding authority even in New York; but when examined it presents a very different case from the one which we are considering. In that company, and under the law then prevailing, it seems a member of the society could designate anybody as beneficiary. There was no restriction in that regard, as under the law of Massachusetts and of the Legion of Honor. An entire stranger was an eligible beneficiary. There does not appear to have been any warranty of truth of the statement, nor agreement to forfeit if untrue statement was made.

A person was named as wife, who was not such in fact. The Court held that the person who was intended to take was plainly designated by name, and that this was enough to entitle her to recover. The real question in that case was whether the applicant in this case could designate any *one but a wife* as beneficiary. At the time he joined his wife's name was registered according to the rules of the society, and she contended that her right was *vested* and could not be divested by any change in the constitution of the society and subsequent change *of designation* by the husband. Real husband and wife were living apart, and the husband designated another woman with whom he was living, and who adopted his name and passed as his lawful wife till his death. This adopted wife was allowed to recover to the exclusion of the wife who was originally named as beneficiary, or to be more exact, who had been originally registered as his wife under the rules of the company. The decision turned on the right to designate the person *named* as beneficiary, and the person being designated clearly, the designation of her as "wife," when she passed as such, but was not so, was held not to disentitle her. The relationship of the parties in that case had no bearing on the rights of either. *Any body* could be beneficiary.

That case, therefore, is not inconsistent in any degree with the view we take.

It is contended, however, that the appellant is estopped from saying the appellee is not the niece of the deceased because Dr. Pennington, who witnessed the application of the deceased, knew, or had heard, she was not his niece. His testimony on this subject is embodied in the first and second bills of exception.

Dr. Pennington was Grand Secretary of the Grand Council of the American Legion of Honor, and as such officer, was present at the institution of this subordinate council, of which the deceased was a charter member. He witnessed signatures, he says, of Evans to the application and obligation, though the record does not show that he attested anything but the subscription of the obligation. Reliance Council not having been then organized, there was no secretary elected and acting for it, and he performed certain duties which such secretary would have performed had there been one. He says it was his duty to see that the blanks were filled, but that it was *not* his duty to see *how* they were filled, or "*to pass on the propriety of the filling.*" He says he usually cast his eye over them to see if they were properly filled, and presumes he did so in this case, though he has no recollection whether he did or not. He says he had heard, before that time, that the appellee was not the niece of Evans, but he had no personal knowledge on the subject, and does not recollect having paid *any attention* to the statement in the application that she was his niece ; and he does not know that he would 'have called attention to it had he noticed it, as he had no personal knowledge on the subject. He further says, it was *no part of his duty to pass on the capacity of the beneficiary.* He further says he was not and never had been "an officer of the *Supreme Council* of American Legion of Honor, but might be considered its agent *in organizing Reliance*

*Council,*" that he was "only Grand Secretary of the Grand Council which had *nothing whatever to do with the widows' and orphans' fund.*"

Upon this testimony, and careful examination of the constitution and laws of the order, in both its branches, we can not find any ground for holding Dr. Pennington was such agent of the Supreme Council as to affect it, through him, with notice of a fact which Dr. Pennington had only heard of incidentally, and long before, and of the truth or falsity of which he had no personal knowledge.

In the first place, the Grand Council of which he was secretary *had nothing to do with the benefit fund.* His statement to that effect is fully borne out by the constitution and laws of the order. In the second place he was not, by any law charged with the duty of instituting new councils or receiving applications for membership ; still, in this case, by somebody's authority or permission, he did institute Reliance Council, and his action was accepted as regular and lawful and the council proceeded to work. Whilst it was his duty to *receive* the applications of charter members for *transmission* to the Supreme Lodge or Council, and to see that they were in *proper form* and with blanks all filled up, he says it was not his duty to examine into or pass upon the qualification of any beneficiary who might be named in the application. It was subject of change and needed no special looking after. He was only to see that they were all prepared to ballot among themselves, whether they would associate with one another as members. As instituting officer, Dr. Pennington received Evans and his application. His duty at most was that of a special instituting officer. Section 4 of Law V, defines the duty of the instituting officer : "It shall be the duty of the instituting officer to see that the medical examiner is legally qualified, (by making application to supreme commander who

shall issue a commission,) to deliver to the medical examiner the instructions to the medical examiner, to inspect the medical examinations of all the petitioners and refer them to the medical examiners-in-chief for decision, and see *that the papers are correct in form*, and that the *laws* are complied with before permitting the applicants to ballot; to explain to the petitioners the duties of each officer of a council before an election is had; to instruct the officers in their respective duties and to exemplify the secret work.'' Thus it is seen that the instituting officer was charged with no duty respecting the application beyond seeing it was in proper form, and it and all the papers including examination by medical examiner, by section 1 of Law 111, would be forwarded to the supreme secretary of the Supreme Council, which had sole control of the benefit fund. The instituting officer's sole duty, therefore, so far as this application is concerned, was to see it was in proper form, and, if it was, it passed from his hands to the Supreme Council, of which he was no officer. The effort to liken it to the duties of a general soliciting agent of an ordinary insurance company, who is charged with the duty of making certain inquiries, the truth of which is essential to the company to be known, can not be sustained. There is no analogy. The general rule is properly laid down by *Bliss on Life Insurance*, 112 *to* 121; but the rule there laid down, and approved by the Supreme Court in *Insurance Company vs. Wilkinson*, 13 *Wall.*, 222, has reference to regular insurance companies, operating through agents specially charged with the duty of securing information respecting the assured; but we can not see that it can control this case and estop this corporation by hearsay information of an officer *not* charged with the duty of ascertaining the qualifications of a beneficiary named by the insured as the person to receive the insurance money upon the death of the insured.

In fact, no provision seems to be made for charging any body with the duty of inquiring into the truth of applicant's statement of the character of the beneficiary he might name. The corporation seems to have relied wholly, in that regard, on the warranty of truth on the part of applicant and agreement to forfeit if false. He warranted his statement true, and took the consequence of falsehood by forfeiture, if false. Whether his statement was fraudulent or not does not seem to be open to inquiry. It was a false statement—a misleading statement—that the beneficiary was a lawful beneficiary, and the corporation had no further inquiry to make. She is declared a relative and not a dependent; so that all that was necessary for the appellant to show was that she was not a relative, in order to obtain protection through the warranty of truth and agreement to forfeit if false.

Entertaining this view it follows that there was error in admitting the testimony excepted to in the first and second exceptions, and in rejecting the appellant's first prayer. It also follows that there was error in granting all the plaintiff's prayers. We understand from the proof and concessions that the appellee was not the niece or relative of the insured, and under our ruling we see no occasion to order a new trial. We shall therefore reverse, without ordering a new trial.

*Judgment reversed.*

(Decided 12th June, 1889.)