# SUPREME COUNCIL OF THE ROYAL ARCANUM *vs.* CHRISTINA E. BRASHEARS.

*Life Insurance—Warranties and Representations—Burden of Proof— Benefit Societies—Statute of State of Incorporation Relating to Construction of Policy—Presumption Against Suicide—Use of Intoxicating Liquor—Proofs · of Death—Evidence—Measure of Damages.*

A paper, signed by a person who describes himself as "Acting Coroner," setting forth that he did not hold an inquest upon the body of a certain person because it was a clear case of suicide, was sent by a local council of a benefit society of which the deceased was a member, to the governing body. *Held*, that this paper is not admissible in evidence, in an action by the beneficiary named in the certificate of insurance of the deceased against the society, because the same is not a certificate of the finding of a coroner's jury, but only an expression of the opinion of the person signing it, and because it is not a representation made by the beneficiary.

A certificate of membership in the nature of a life-insurance policy was issued to a citizen of this State by a Massachusetts corporation. A statute of that State provided that "when any certificate is issued to a resident of the Commonwealth by any fraternal beneficiary corporation organized under the laws of" that State, a misrepresentation in the application shall not avoid the certificate unless the misrepresentation was made with actual intent to deceive or unless the matter misrepresented increased the risk. *Held*, that although the Act in terms applies only to certificates issued to residents of Massachusetts, yet, since in benefit societies all members are to be treated alike, a certificate issued to a member in this State should be construed in pursuance of the statute.

When a policy of life insurance does not expressly declare that the statements made in the application shall be treated as warranties, then such statements, although made part of the contract, are not to be regarded as warranties which cast upon the plaintiff suing on the policy the burden of proving their literal truth, but are to be treated as representations, the materiality as well as the truth of which are to be passed on by the jury.

When a policy of life insurance provides that the statements of existing facts in the application relating to the health, habits, &c., of the assured shall be warranties, a plaintiff suing · on the policy is not bound to prove their truth, but the defendant must show their falsity if he alleges a breach.

A certificate of membership in a mutual benefit society always includes its constitution and by-laws, whether specially referred to or not, and consequently, in an action against such a society to recover a death loss, a prayer instructing the jury that the contract was composed of the benefit certificate, the application and the medical examination is erroneous.

Deceased, who was insured in a benefit society, was found dead near a country road with a pistol wound in his head, a pistol lying on the ground nearby, together with an empty bottle of laudanum, and one that smelled of whisky. Proof of death was furnished by the local council of which he was a member, to the society, and the cause of death was therein stated to be suicide. The certificate of membership provided that the statements made in the application and in the medical examination should be part of the contract, but they were not expressly declared to be warranties, and it was not provided that suicide should avoid the policy. Under the rules of the association proof of death was not to be furnished by the beneficiary, but by the local council. In an action on the policy by the beneficiary, *Held*,

1st. That the presumption of law is that the death of the deceased did not result from suicide and this presumption is not rebutted by the circumstances of this case, but the burden of proof that the deceased committed suicide is on the defendant.

2nd. That the burden is not upon the plaintiff to prove the truth of all the statements made by the deceased in his application for membership, the same not being made warranties by the certificate.

3rd. That the statement made by deceased in his application that he did not then use alcoholic stimulants does not authorize an instruction to the jury that if he had used alcoholic stimulants within six months before his application, then the verdict must be for the defendant, because the statement of the deceased related to his habits at the time it was made, and also because there was no sufficient evidence that the deceased had been addicted to the use of liquor within said six months.

4th. That the measure of damages is the amount stipulated to be paid in the benefit certificate, with interest, at the discretion of the jury.

Appeal from a judgment of the Circuit Court for Frederick County (McSherry, C. J., Henderson and Motter, JJ.)

The cause was argued before Page, Boyd, Pearce and Schmucker, JJ.

*William P. Maulsby* and *A. C. Trippe* (with whom was *James McC. Trippe* on the brief), for the appellant.

*Milton G. Urner* and *William H. Thomas* (with whom were *Clabaugh & Roberts* and *Keedy & Urner* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

On January 29th, 1896, Cornelius O. Brashears, who was a resident of Mt. Airy, in Frederick County, became a member of the Mt. Airy Council of the Royal Arcanum. On the 24th of March in the same year Brashears spent a portion of the day in Ellicott City, where he purchased a six-dram bottle of laudanum.    In the afternoon of the same day he started towards his home on the B. & O. R. R., but left the cars at Marriottsville and walked up the public road, where he was last seen sitting upon a fallen tree reading a book.

Two days afterwards his dead body was found near the place at which he was last seen alive.    There was a pistol wound in the head of the body when it was found, and a pistol, the empty laudanum bottle and another empty bottle which smelled of whiskey, all lay near by.

At the time of his death he was in good standing in the Mt. Airy Council, and all of his dues to it were paid.

The Royal Arcanum is a well-known Mutual Benevolent Association.    It is composed of a Supreme Council, incorporated by the State of Massachusetts, which is the governing body of the society, and numerous subordinate councils, which are unincorporated local organizations.    A person joining the Arcanum becomes a member of one of the local councils, but not of the Supreme Council, which has no intercourse or dealings with him otherwise than through the local council of which he is a member.    One of the most important features of the association is a scheme, in the nature of life insurance, for the payment, at the death of each member, of a specified sum of money to a beneficiary designated by him.    The terms and conditions upon

which this payment is to be made and the person who is entitled to receive it, are set forth in a benefit certificate which is furnished to the member.

When an individual joins the Arcanum his benefit certificate is issued by the Supreme Council, and is sent by it, not to him, but to the local council of which he is a member, and the latter delivers it to him. When a member dies the by-laws do not require the beneficiary to furnish notice and proofs of death, as in cases of ordinary life insurance, but they distinctly impose upon the local council to which he belonged the obligation to appoint a committee to ascertain the cause and circumstances of the death, and to send formal notice and proof of the death to the Supreme Council, upon blank forms supplied by that body. The Supreme Council then passes upon the proofs, with the right to demand further proofs from the local council, and when the proofs are approved by the officials of the Supreme Council, it transmits to the local council a check to the order of the beneficiary for the sum due, and the local council pays the check to the beneficiary and procures the return of the outstanding benefit certificate.

In the present case, after the death of Brashears, formal proofs and notice of his death and the circumstances of it were furnished, within the required time, by the Mt. Airy Council, which was the local council of which he was a member, to the Supreme Council, and it returned them to the local council for a further report, which was sent as requested, and was duly acknowledged without objection by the Secretary of the Supreme Council. The report of the committee of investigation appointed by the local council, which formed part of the proofs of death forwarded to the Supreme Council, stated the cause of death to be suicide, and along with the report, on a separate piece of paper, was a statement in the nature of a certificate, as follows :

" Ellicott City, Md., Mar. 30, '96. In regards to the case of Mr. C. O. Brashears, I viewed his body and had full controll of it and found it a clear case of suicide, and, there-

fore, did not deemed a jury nec—ry.    Bernard Wallen-
horst, Acting Coroner."

When Brashears desired to become a member of the Mt.
Airy Council, he, in accordance with the rules of the order,
filed an application which contained a variety of statements
as to his habits and condition, among which was the state-
ment that he was temperate in his habits.    The application
contained a provision warranting the truth of its statements
and agreeing that if any of them were untrue or fraudulent,
or if there were any concealment of facts therein or to or
from the medical examiner, the rights of the beneficiary
should be forfeited.

When this application from Brashears was received by
the local or Mt. Airy Council, it directed him to present
himself to the medical examiner and he did so, and, in reply
to the questions propounded to him by that official, said
that he did not use alcoholic or other stimulants, that he
was then a total abstainer, although until four years prior
thereto he drank occasionally.    These answers were in
writing and had appended to them a warranty of their truth-
fulness, which was signed by Brashears.

The certificate of membership which was issued to him
contained a provision, that it was issued "upon condition
that the statements made by him in his application for mem-
bership in said council, and the statements certified by him
to the medical examiner    *    *    *    be made part of this
contract."    The certificate did not refer to the statements
as warranties nor make any reference to the warranty of
their truth by Brashears.    It further provided for the pay-
ment of $3,000 to the appellee, who is the widow of Bra-
shears, "upon satisfactory evidence of the death of said
member," but made no reference to the cause or method of
his death, and did not mention suicide at all.

At the trial of the case in the Circuit Court, the appel-
lant, as defendant, took four exceptions to the rulings of the
Court during the progress of the case, apart from the ex-

ception to the rejection of its prayers submitted after the testimony was all in.

The first exception was to the refusal of the Court to require the plaintiff to read to the jury, as part of the official notice of death, the paper attached to the notice, dated March 30, 1896, signed by Wallenhorst.   The same question, in a slightly different form, was raised by the fourth exception which was taken to the Court's refusal to permit the defendant to read that paper to the jury as evidence on its behalf.

We think the Court below was correct in both of these rulings.   The paper in question, is at best, an *ex parte* expression of the opinion of Wallenhorst.   It is not a certificate of the findings of a corner's jury or of the result of an inquest   The party signing it does not profess to be an official coroner, nor does it appear upon what ground or by what authority he claims to be what he designates as "acting coroner."   It is not strictly part of the proof or notice of death, and was not called for by the policy or certificate of membership, or by the blank forms of proof supplied by the Supreme Council, nor do the by-laws of the association require its production.   It was in fact furnished by the Mt. Airy Council and not by the appellee, who, under the system of proofs of death adopted by the Supreme Council, was not required to furnish proof of death.   It cannot be regarded as a representation made by her, nor was it binding upon her.   *Anderson* v. *Supreme Council,* 135 N. Y. 107.   *Beach on Insurance,* secs. 1216–1217.

It is equally clear that this paper was not a proper one to be read to the jury, on the offer of the appellant, as evidence to prove that the death occurred by suicide, for, although the formal proofs of death were properly admitted to show that the requirements of the certificate of membership had been complied with in that respect, they were not evidence for any other purpose and their sufficiency was a question for the Court to decide.   *Mutual Life Insurance Co.* v. *Stibbe,* 46 Md. 312; *Fidelity Mut. Life Association* v.

*Ficklin*, 74 Md. 183; *Travelers' Ins. Co.* v. *Nicklas*, 88 Md. 470.    The paper was at best a mere expression of the opinion of Wallenhorst as to the cause of Brashears' death.    It was not even verified by affidavit, and it lacked every essential feature of evidence.    To permit mere *ex parte* statements or even affidavits which accompany proofs of death, to be read to the jury, would be a most dangerous practice, for they might be taken by them as being proof and undue weight attached to them.    *Cook* v. *Ins. Co.*, 84 Mich. 12.

The presumption of law is that the death of the insured was due to natural causes, and the fact that it resulted from a pistol-shot wound does not change the presumption which in that case is that the wound was the result of accident; and the burden of proof is upon the defendant to show by a preponderance of testimony that it was not the result of accident.    *Travelers' Ins. Co.* v. *Nicklas, supra; Bliss on Life Insurance*, sec. 337; *Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661; *Mallory* v. *Travelers' Ins. Co.*, 47 N. Y. 54; *Guardian Life Ins. Co.* v. *Hogan*, 80 Ills. 35; *Home Benefit Association* v. *Sargent*, 142 U. S. 691.    Wallenhorst testified in the case, and the jury had the benefit of his evidence as to the condition of the body and its surroundings when he saw it.    It would have been clearly improper to have permitted this unsworn paper signed by him to have also gone to the jury as evidence.

The second exception was to the admission in evidence, on the offer of the appellee, of a duly certified copy of chap. 281 of the Acts of 1895 of the State of Massachusetts, relating to misrepresentations in application for membership in fraternal beneficiary corporations, which is as follows:

Section 1.    When any certificate is issued to a resident of the commonwealth by any fraternal beneficiary corporation organized under the laws of or admitted to do business in this commonwealth, no oral or written misrepresentations or warranty made by the assured or in his behalf in the application for such certificate, or in the negotiation of the com-

pact, shall be deemed material, or defeat or avoid the certificate or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss.

The benefit certificate upon which the present suit is founded was executed in Boston by a Massachusetts corporation and therefore the statute in question was applicable to it and was clearly admissible in evidence under the rulings in the case of the *Fidelity Mutual Life Association* v. *Ficklin*, 74 Md. 180.

It is true that this Act applies in terms only to cases when certificates of membership in benevolent associations are issued to residents of Massachusetts, but the mutuality and fraternity which form the basis of mutual benevolent associations and kindred organizations require that all of their members shall be treated alike.

It would be fatal to the whole benefit scheme of the Royal Arcanum, if when the case of the beneficiary of a Massachusetts member of the organization were on trial his or her rights should be measured by a more favorable standard than would be applied to the beneficiary of a Maryland member. The regulations contained in the constitution and by-laws of the society contemplate like treatment of all of its members of the same class, without special favor or advantage to any, under a similar state of facts. In *Ficklin's case*, which was a suit by a Maryland member, in a Maryland Court, against an insurance company incorporated in Pennsylvania, this Court held that the policy was subject to and governed by a Pennsylvania statute, which was almost identical in its provisions with the Massachusetts statute now under consideration. The Pennsylvania statute did not in terms apply only to policies issued to residents of that State, but, as we have already said, in a purely mutual association like the Royal Arcanum, all members must be treated alike, for it would be destructive of the mutuality itself of the association if in suits against it the benefit certificate issued to a citizen of one State should be entitled to a more favorable construc-

tion than a similar certificate issued to the citizen of another State.

The third exception was taken to the refusal by the Court to grant the prayers taking the case away from the jury, which were offered by the defendant at the close of the plaintiff's case.   There were four of these prayers and the substance of them was that the statements made by Brashears in his application and medical examination were warranties and constituted part of the contract with the defendant, and that the burden of proof of the truth of the statements was upon the plaintiff, and that she had offered no evidence legally sufficient to prove their truth and that the defendant had not been furnished with proper proofs of death.   These prayers were properly rejected.

The weight of authority seems to be, that ordinarily the statements made by an applicant for life insurance, which by the terms of the policy are made part of the contract with the insurance company, are not to be regarded as warranties which cast upon the plaintiff the *onus* of proving their literal truth, but are to be regarded as representations the materiality as well as the truth of which is to be passed on by the jury.   *Mutual Benefit Life Ins. Co.* v. *Wise*, 34 Md. 597 ; *Anderson* v. *Fitzgerald*, 4 House of Lords Cases, 503–514; *Campbell* v. *N. E. Ins. Co.*, 98 Mass. 381.   Of course if the policy of insurance upon its face plainly declares that the statements made by the applicant shall be treated as warranties, then, in the absence of any controlling statutory rule of construction, they would be so treated.   If, however, the language of the policy is such as to leave any room for construction, the statements of the applicant will be treated as representations rather than warranties.   In the case of *Nat. Bank* v. *Insurance Co.*, 95 U. S. 678, the Court say : " When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the Court should lean

against that construction which imposes upon the assured
the obligation of a warranty." In *Moulor* v. *Am. Life Ins.
Co.*, 111 U. S. 335, the Court quote the preceding extract
from the case in 95 U. S. and say "these rules of interpre-
tation, equally applicable to life insurance, forbid the con-
clusion that the answers to the questions in the application
constituted warranties to be literally and exactly fulfilled, as
distinguished from representations which must be substan-
tially performed in all matters material to the risk." In the
present case, as we have already said, the benefit certificate
refers to the statements of the applicant simply as "state-
ments," not as warranties, and uses language allowing full
room for construction as to the light in which they were in
fact intended to be considered.

Even if the representations of Brashears in this case are
to be regarded as warranties, there is abundant authority for
holding the rule now to be that the burden of proof of their
truth is not upon the plaintiff in a suit upon the policy.
*Piedmont and Arlington Life Ins Co.* v. *Ewing*, 92 U. S. 377;
*Campbell* v. *N. E. Mutual Life Ins Co.*, 98 Mass. 394;
*Joyce on Insurance*, sec. 3790; *Beach on Insurance*, sec.
1315, states the law now to be that as to promissory war-
ranties, by which the assured promises to do certain acts,
such as to pay premiums, furnish proofs of death and the
like, the party suing on the policy must aver and prove
them, but as to alleged warranties in the statement of exist-
ing facts when the policy was issued, as to health, habits,
&c., of the assured, the defendant must aver and prove
them. See also *Swick* v. *Home Life Ins. Co.*, 2 Dillon, 160;
*Van Valkenburg* v. *Ins. Co.*, 70 N. Y. 605.

The proofs of death which were furnished by the Mt.
Airy Council to the Supreme Council in the present case,
were in the usual form, upon blanks furnished by the
Supreme Council and in conformity with its regulations and
were sufficient.

After the close of the testimony the appellee, as plaintiff,
offered two prayers, which were granted, and the appellant

offered sixteen prayers in addition to the four prayers offered by it at the close of the plaintiff's case.. The Court granted the appellant's eighth prayer and the ninth as modified, and rejected the others.   The eighth prayer asserted that if the jury believed from all the evidence that Brashears committed suicide, as there was no evidence that he was insane at the time of so doing, the verdict must be for the defendant. The ninth prayer, as modified, asserted the proposition, that, if the jury found that the statements made by Brashears, in reference to his use of alcholic or other stimulants, were untrue and made with the intent to deceive the defendant, then the verdict must be for the defendant.

The fifth exception was doubtless intended by the appellant to relate to and bring here for review the Court's action on the rejected prayers, but it fails to do so.   The exception was prepared in skeleton form, leaving blank the spaces in which it was intended to designate the prayers which were rejected.   Doubtless through inadvertence, the appellant had the exception certified without filling up the blanks, and it appears in that form in the record, and all of the prayers follow it in the record but do not appear in or form part of the exception.   Under these circumstances the action of the Court upon the prayers is, strictly speaking, not before us for review.   *Albert* v. *State*, 66 Md. 334; *Hartsock* v. *Mort*, 76 Md. 290; *Central R. R.* v. *Coleman*, 80 Md. 335.   Inasmuch, however, as the rejected prayers of the appellant present but two substantial propositions not already noticed by us, we briefly consider them.

The prayers marked 5¾ and 9 each assert that the contract between Brashears and the appellant was made up of the benefit certificate, the application and the medical examination taken together.   This was plainly wrong, because it is well-settled that the contract of membership in a mutual association is always made with reference to and includes the constitution and by-laws of the association, whether they are specially referred to in the contract or not.   3 *A.*

*& E. Enc.* (2 ed.), 1081; *Yoe* v. *B. C. H. Assn.*, 63 Md. 86; *Fuller* v. *B. & O. Relief Assn.* 67 Md. 433. In the present case they are made part of the contract by the terms of the certificate itself. It is the by-laws of the association which make it incumbent upon the local council to give notice and furnish proofs of death to the Supreme Council, as was done in this case.

The defendant's fifth prayer requested the Court to charge the jury that if they found that Brashears had indulged in alcoholic or other stimulants within six months prior to January 21st, 1896, then his representations as to his use of alcoholic or other stimulants in his application were false, and the verdict must be for the defendant. This prayer was properly rejected, first, because the statement of Brashears that he was a total abstainer was made in response to a question in the present tense, viz.: Do you use alcoholic or other stimulants, and if so, to what extent? He did not state that he had been a total abstainer for four years. The appellant drew that inference from Brashears' reply to another question by the medical examiner, as to his habit of taking liquor through his life. To that question he answered, that until four years ago he drank occasionally. In the second place, there is no clear or sufficient evidence in the record that Brashears had indulged in alcoholic or other stimulants within six months prior to January 21st, 1896. Not a single witness testified to having seen him drink intoxicating liquor within that time. A number of witnesses said that he was temperate in his habits, and one witness said that when Brashears went to the bar with friends, who called for whiskey, he refused whiskey and drank lemonade, ginger ale and other soft drinks. There was evidence that several times he drank cider within the period under discussion, and one witness thought that he had been a little under the influence of liquor in September, 1895, because his face was somewhat flushed, but he was rational, and the witness detected no odor about him, and it was made apparent by the cross-examination of this wit-

ness that he spoke from impressions only, and had no actual knowledge of Brashears having taken liquor or having been under its influence during the period mentioned in the prayer.   This evidence was too vague and indefinite to justify the granting of the prayer.

One of the plaintiff's two prayers fixed the measure of damages at the sum stipulated in the benefit certificate, with interest at the discretion of the jury, and the other asserted that the burden of proof that Brashears came to his death by suicide was upon the defendant.  Both of these propositions were good law, and the prayers were properly granted.

The judgment appealed from will be affirmed with costs.

*Judgment affirmed.*

(Decided June 22nd, 1899).