SUPREME COUNCIL OF THE ROYAL ARCANUM
*v.* GREEN.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 106. Argued December 8, 9, 1914.—Decided June 1, 1915.

Where the trial court refuses to hold that the rights of the parties were to be determined by the law of another State in which a decree had been rendered establishing them and to apply such law, it refuses to give due effect to such decree, and a question arises under the full

faith and credit clause of the Federal Constitution and this court has jurisdiction under § 237, Judicial Code.

The rights of members of a corporation of a fraternal and beneficiary character have their source in the constitution and by-laws of the corporation, and can only be determined by resort thereto, and such constitution and by-laws must necessarily be construed by the law of the State of its incorporation.

The law of the State by which a corporation is created governs in enforcing liability of a stockholder to pay his stock subscription and in establishing the relative rights and duties of stockholders and the corporation.

A failure by the court to give effect to and apply the law of the State of incorporation in consideration of a judgment rendered in that State amounts to denying full faith and credit to such judgment.

In this case *held* that a judgment rendered by a court of the State of incorporation holding an amendment to the constitution and by-laws of a fraternal and beneficiary corporation to be legal, amounted to a construction of the charter by the courts of the State which the courts of another State were bound to recognize under the full faith and credit clause of the Federal Constitution.

A fraternal and beneficiary society is, for the purpose of controversies as to assessments, the representative of all of its members; and a judgment of the State of incorporation as to the validity of an amendment to the Constitution and by-laws must be given effect by the courts of another State even though not between the corporation and the same member.

*Green* v. *Elbert*, 137 U. S. 615, followed in striking from the files of this court the brief of counsel of one of the parties on account of its being so full of vituperative, unwarranted and impertinent expressions in regard to opposing counsel.

206 N. Y. 591, reversed.

THE facts, which involve the effect and application of the full faith and credit clause of the Federal Constitution and other matters, are stated in the opinion.

*Mr. Howard C. Wiggins*, with whom *Mr. Curtis Waterman, Mr. John Haskell Butler, Mr. W. Holt Apgar* and *Mr. Joesph A. Langfitt* were on the brief, for plaintiff in error.

*Mr. F. J. Moissen* for defendant in error:

Plaintiff in error is a corporation organized under the laws of Massachusetts; and, beyond such comity as any other State is willing to confer upon it, it has no corporate status in any other State, and is subject in such other State to any and all the laws, regulations and limitations prescribed therein upon foreign corporations.

The contract, the subject of the transaction herein, was made in and was to be performed in the State of New York, and therefore the rules of law as to its construction and performance must be under the laws of New York, and the laws of Massachusetts have no application.

Amendments to by-laws such as have been made to the by-laws of the plaintiffs in error as affecting contracts previously entered into by corporations like the plaintiffs in error have been held invalid by the courts of the State of New York as affecting such prior contracts and that rule of law is the policy of that State.

The Massachusetts judgment offered in evidence on the trial in the court below was properly excluded; it did not bind the defendant in error in any manner whatsoever, and the claim on the part of the plaintiff in error that the defendant in error is concluded by it, is absolutely untenable.

No Federal question was raised by the pleadings nor upon the trial in the court below, where, under the law of New York, it must be raised for the first time to be considered by the court either upon trial or upon appeal. That cannot be raised for the first time on appeal in this court.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Conformably to the authority conferred by the general laws of Massachusetts to organize fraternal beneficiary

corporations, in 1877 there was issued to designated persons a certificate of incorporation under the name of the Supreme Council of the Royal Arcanum. By the constitution and by-laws, referred to in the certificate, the corporation became what is known as a fraternal association under the lodge system. Its principal objects as stated were:

"1st. To unite fraternally all white men of sound bodily health and good moral character, who are socially acceptable and between twenty-one and fifty-five years of age.

"2nd. To give all moral and material aid in its power to its members and those dependent upon them.

"3rd. To educate its members socially, morally and intellectually; also to assist the widows and orphans of deceased members.

"4th. To establish a fund for the relief of sick and distressed members.

"5th. To establish a widows' and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to his family, or those dependent on him, as he may direct. . . ."

There was power conferred by the constitution and by-laws to subsequently amend such constitution and by-laws in the manner therein provided. The general governing power of the Order was vested in the Supreme Council and the administration of its affairs under the supervision of such Council was entrusted to the officers named in the constitution. Authority was given to the Supreme Council to sanction the organization of local lodges or councils upon whom were conferred certain powers not in any way conflicting with the constitution and by-laws of the Order, and the members of such local lodges or councils were required to be members of the Order and

were subject to the duties and responsibilities which resulted from that relation and enjoyed also the resulting benefits.

Pursuant to the constitution under due authority there was organized in the State of New York a local lodge or council known as the De Witt Clinton Council No. 419 of the Royal Arcanum. In May, 1883, Samuel Green, the defendant in error, made application to become, and was admitted as, a member of this council. In his application it was directed that in case of his death, "all benefit to which I may be entitled from the Royal Arcanum, be paid to Louisa Green related to me as my wife, subject to such future disposal of the benefit, among my dependents, as I may hereafter direct, in compliance with the Laws of the Order. . . . I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the Laws, Rules, and Usages of the Order now in force, or which may hereafter be adopted by the same."

Upon the admission of the applicant a certificate was issued to him as a member of the De Witt Clinton Council No. 419, of the Royal Arcanum upon the condition, among others, "that the said member complies, in the future, with the laws, rules and regulations now governing the said Council and Fund, or that may hereafter be enacted by the Supreme Council to govern said Council and Fund." The certificate then stated that upon compliance with these conditions, "The Supreme Council of the Royal Arcanum hereby promises and binds itself to pay out of its Widows' and Orphans' Benefit Fund, to Louisa Green (wife) a sum not exceeding Three Thousand Dollars, in accordance with and under the provisions of the laws governing said Fund, upon satisfactory evidence of the death of said member. . . ."

At the time this certificate was issued, under the by-

laws the amount of the assessment required to be paid to the corporation to enable it to meet claims coming due under the Widows' and Orphans' Benefit Fund was graded according to the age of the member, and the contribution required of Green for this purpose. was stated in his certificate to be $1.80 per assessment, and he paid up to 1898 at that rate various assessments called for under the rules of the Order. In 1898 by a three-fourths vote of the Supreme Council, the system theretofore prevailing, exacting the payment of assessments as called for was changed and the duty was imposed to make payment monthly of a sum the amount of which, although still dependent upon the age of the member, was higher than had previously prevailed. Under these new rates the sum due from Green was $3.16 per month, and he met regularly the payments thus exacted until the year 1905. In that year by the action of the Supreme Council taken in virtue of the requisite three-fourths vote, while the standard of age was continued, the sum to be paid was again increased so that the monthly assessment of Green became $6.87, and from October, 1905, when these new rates became effective, down to February, 1910, it is not disputed that Green paid the amount of the increased assessments monthly, although it was found by the trial court that he did so under protest because of a denial on his part of the right of the Supreme Council even under the sanction of the requisite vote and in compliance with the forms of the constitution and laws of the Order to increase the rates.

In the meanwhile shortly after the going into effect of the increased rates, that is, in November, 1905, sixteen members of the Order, holders of certificates under the Widows' and Orphans' Benefit Fund, filed a bill in the Supreme Judicial Court of Massachusetts against the corporation in their own behalf and in behalf of all other certificate holders to vacate and set aside the by-

laws by which the rates had been increased on the ground that the increase was *ultra vires* of the corporation and violative of contract rights. The case was submitted by agreement of counsel to the whole court upon an agreed statement of facts and was on May 17, 1906, decided. The court after a careful review of the general nature of the corporation, of the character of the fund, of the rights of its members as evidenced by the certificates, of the constitution and by-laws of the corporation and the laws of the State applicable thereto, decided that the increase complained of was valid, impaired no contract right of the certificate holders and was entitled to be enforced. *Reynolds* v. *Supreme Council, Royal Arcanum,* 192 Massachusetts, 150.

Four years after this decision Green ceased to make the payments required by the by-laws of the corporation and in virtue of his membership and ownership of the certificate issued to him commenced in a state court in New York this suit against the Supreme Council and the Regent of De Witt Clinton Council No. 419, assailing the validity of the increase in the rate of assessment made in 1905 on the ground that it was void as exceeding the powers of the corporation and because conflicting with his contract rights as a member of the corporation and a certificate holder. The prayer of the bill was not that the corporation be restricted to the method and rate of assessment which prevailed in 1883 when the complainant became a member, but that the corporation be confined to the rate of assessment established by the amendment adopted in 1898 and that the complainant be decreed to have a contract right to pay only that sum monthly in discharge of his duty to pay assessments and that the corporation and its officers be enjoined during his life from exacting any greater sum or in any way suspending him for refusing to pay the amount fixed by the amendment of 1905.

The answer in twenty-seven distinct paragraphs asserted the validity of the assessment and the. action of the corporation by which it was established. It asserted that the complainant as a member in a mere beneficiary association was bound thereby and that no contract rights of his were affected. In many reiterated forms of statement it was asserted that the corporation was created under the laws of Massachusetts and was subject thereto and that under those laws, by which the power to make the change was to be determined, the validity of the change was beyond question. It was then alleged that the *Reynolds* suit in the courts of Massachusetts was brought by certain members and certificate holders against the corporation not only in their own behalf but as a class suit in favor of all others similarly situated and that the facts in that case were substantially identical with those presented in this. The judgment of the Supreme Judicial Court of Massachusetts maintaining the by-law and holding that the assessment was valid and binding and that no contract rights existing in favor of certificate holders were impaired by the increase of rate was explicitly referred to and in addition the twenty-seventh paragraph of the answer expressly counted on the judgment as follows:

"That the defendant Supreme Council says that the rights of the plaintiff in respect to his contract with the said defendant and his membership in the defendant order, and the changes adopted by it were and are concluded and determined by the aforesaid judgment of the Supreme Judicial Court of Massachusetts; that under the Constitution of the United States. the same is entitled to full faith and credit in the State of New York, and that the complaint should be dismissed."

On the trial the proceedings and judgment in the Massachusetts court duly exemplified as required by the Act of Congress were offered in evidence and excluded

and an exception reserved. The court made what in the record are styled findings of fact but which embrace every question of law which it was conceived the controversy could possibly involve. The court held that the complainant was not barred by laches in consequence of his having accepted the amendment to the rates made in 1898, and that as he had protested in making the payments during the four years as to the rates fixed under the amendment of 1905, he was not estopped from questioning the validity of that amendment. It was decided that under the law of New York as a certificate holder the complainant had a contract which entitled him to prevent any increase of rate over that established in 1898. So far as the law of Massachusetts was concerned it was declared that although it was governed by that law, the assessment would be valid, as the complainant was a member of a subordinate council existing in New York and doing business there, the rights of its members were controlled by the New York law wholly irrespective of the law of Massachusetts. The rights asserted by the complainant were adjudged to exist and the relief prayed for was granted.

The case then went to the Appellate Division of the Second Department. The court considering the character of the corporation, the provisions of its constitution and by-laws and the powers which they conferred on the corporation, as well as the application for membership and the certificate issued pursuant thereto, decided that the amendment as to rates was not *ultra vires* of the corporation but on the contrary was within its powers and violated no contract rights of the complainant. Without deciding whether the case was controlled by the law of Massachusetts, and without passing upon the action of the trial court in seemingly rejecting the offer of the Massachusetts judgment, the court, treating that judgment as before it and considering besides the Massachusetts law as open

for its consideration, held that the law of that State and
the judgment there rendered served additionally to sus-
tain the view taken as to the significance of the constitu-
tion and by-laws of the order and thus served additionally
to demonstrate that error had been committed by the
trial court in holding that under the law of New York
there was a right to relief. 144 App. Div. (N. Y.) 761.
The case then went to the Court of Appeals where the
judgment of the Appellate Division was reversed and that
of the trial court affirmed on the ground that the law of
New York governed and established under the circum-
stances disclosed the right of the complainant to the relief
which had been awarded him. 206 N. Y. 591.

It is not disputable that, disregarding details, all the
rights asserted under the assignments of error come to one
contention, that a violation of the full faith and credit
clause of the Constitution of the United States resulted
from refusing to hold that the rights of the parties were
to be determined by the Massachusetts law and to apply
that law, and in further refusing to give due effect to the
decree rendered in Massachusetts concerning the subject
of the controversy.

By a motion to dismiss it is urged that this question is
not open for consideration because it was not raised below.
But, as we have seen, the fact that the charter was a
Massachusetts charter and the controlling character of
the laws of that State on its operation and effect were as-
serted by way of defense over and over again in the plead-
ings. It is, indeed, true that in none of the averments
concerning the duty to apply the Massachusetts law and
the validity under that law of the provision of the con-
stitutions and by-laws which was assailed was any express
reference made to the full faith and credit clause of the
Constitution of the United States, but this was not the
case as to the Massachusetts judgment which was expressly
pleaded, accompanied with an explicit averment that not

to give it due effect would be a violation of the full faith and credit clause of the Constitution of the United States. And as what was the due effect to be given to the judgment depended, as we shall hereafter more particularly point out, upon whether the Massachusetts law controlled the parties, since if it did, the judgment would be entitled to one effect, and if it did not, to another effect, it follows that the claim as to constitutional right concerning the judgment also involved deciding whether the Massachusetts law controlled. It follows that in both aspects the claim of full faith and credit under the Constitution of the United States was asserted, and whether the court below erred in holding that that clause was inapplicable because the contract was a New York contract governed by New York law is the question for decision. And the solution of that question involves two considerations: first, was the controversy to be determined with reference to the Massachusetts charter and laws and judgment; and second, if yes, did they sustain the right of the corporation to make the increased assessment complained of?

Before coming to consider the subject in its first aspect as controlled by authority, we briefly contemplate it from the light of principle in order that the appositeness of the authorities which are controlling may be more readily appreciated.

It is not disputable that the corporation was exclusively of a fraternal and beneficiary character and that all the rights of the complainant concerning the assessment to be paid to provide for the Widows' and Orphans' Benefit Fund had their source in the constitution and by-laws and therefore their validity could be alone ascertained by a consideration of the constitution and by-laws. This being true, it necessarily follows that resort to the constitution and by-laws was essential unless it can be said that the rights in controversy were to be fixed by disregarding the source from which they arose and by putting out of view

the only considerations by which their scope could be ascertained. Moreover, as the charter was a Massachusetts charter and the constitution and by-laws were a part thereof, adopted in Massachusetts, having no other sanction than the laws of that State, it follows by the same token that those laws were integrally and necessarily the criterion to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws. Indeed, the accuracy of this conclusion is irresistibly manifested by considering the intrinsic relation between each and all the members concerning their duty to pay assessments and the resulting indivisible unity between them in the fund from which their rights were to be enjoyed. The contradiction in terms is apparent which would rise from holding on the one hand that there was a collective and unified standard of duty and obligation on the part of the members themselves and the corporation, and saying on the other hand that the duty of members was to be tested isolatedly and individually by resorting not to one source of authority applicable to all but by applying many divergent, variable and conflicting criteria. In fact their destructive effect has long since been recognized. *Gaines* v. *Supreme Council of the Royal Arcanum*, 140 Fed. Rep. 978; *Royal Arcanum* v. *Brashears*, 89 Maryland, 624. And from this it is certain that when reduced to their last analysis the contentions relied upon in effect destroy the rights which they are advanced to support, since an assessment which was one thing in one State and another in another, and a fund which was distributed by one rule in one State and by a different rule somewhere else, would in practical effect amount to no assessment and no substantial sum to be distributed. It was doubtless not only a recognition of the inherent unsoundness of the proposition here relied upon, but the manifest impossibility of its enforcement which has led courts of last resort of so many States in passing on questions involving the general authority of

fraternal associations and their duties as to subjects of a general character concerning all their members to recognize the charter of the corporation and the laws of the State under which it was granted as the test and measure to be applied. *Supreme Lodge* v. *Hines,* 82 Connecticut, 315; *Supreme Colony* v. *Towne,* 87 Connecticut, 644; *Palmer* v. *Welch,* 132 Illinois, 141; *Grimme* v. *Grimme,* 198 Illinois, 265; *American Legion of Honor* v. *Green,* 71 Maryland, 263; *Royal Arcanum* v. *Brashears,* 89 Maryland, 624; *Golden Cross* v. *Merrick,* 165 Massachusetts, 421; *Gibson* v. *United Friends,* 168 Massachusetts, 391; *Larkin* v. *Knights of Columbus,* 188 Massachusetts, 22; *Supreme Lodge* v. *Nairn,* 60 Michigan, 44; *Tepper* v. *Royal Arcanum,* 59 N. J. Eq. 321; *S. C.,* 61 N. J. Eq. 638; *Bockover* v. *Life Association,* 77 Virginia, 85. In fact, while dealing with various forms of controversy, in substance all these cases come at last to the principle so admirably stated by Chief Justice Marshall more than a hundred years ago (*Head* v. *Providence Insurance Co.,* 2 Cranch, 127, 167) as follows:

"Without ascribing to this body, which, in its corporate capacity, is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may correctly be said to be precisely what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties only in the manner which that act authorizes. To this source of its being, then, we must recur to ascertain its powers. . . ."

In addition it was by the application of the same principle that a line of decisions in this court came to establish: first, that the law of the State by which a corporation is created governs in enforcing the liability of a stockholder as a member of such corporation to pay the stock subscription which he agreed to make; second, that the state law and proceedings are binding as to the ascertaining of

the fact of insolvency and of the amount due the creditors
entitled to be paid from the subscription when collected;
and third, that putting out of view the right of the person
against whom a liability for a stockholder's subscription
is asserted to show that he is not a stockholder, or is not
the holder of as many shares as is alleged, or has claim
against the corporation which at law or equity he is en-
titled to set off against the corporation, or has any other
defense personal to himself, a decree against the corpora-
tion in a suit brought against it under the state law for the
purpose of ascertaining its insolvency, compelling its
liquidation, collecting sums due by stockholders for sub-
scriptions to stock and paying the debts of the corpora-
tion, in so far as it determines these general matters, binds
the stockholder, although he be not a party in a personal
sense, because by virtue of his subscription to stock there
was conferred on the corporation the authority to stand
in judgment for the subscriber as to such general ques-
tions. *Selig* v. *Hamilton,* 234 U. S. 652; *Converse* v. *Ham-
ilton,* 224 U. S. 243; *Bernheimer* v. *Converse,* 206 U. S. 516;
*Whitman* v. *National Bank,* 176 U. S. 559; *Hawkins* v.
*Glenn,* 131 U. S. 319.

That the doctrines thus established if applicable here
are conclusive is beyond dispute. That they are applicable
clearly results from the fact that although the issues here
presented as to things which are accidental are different
from those which were presented in the cases referred to,
as to every essential consideration involved the cases are
the same and the controversy here presented is and has
been therefore long since foreclosed.

The controlling effect of the law of Massachusetts being
thus established and the error committed by the court
below in declining to give effect to that law and in thereby
disregarding the demands of the full faith and credit clause
being determined, we come to consider whether the in-
crease of assessment which was complained of was within

the powers granted by the Massachusetts charter or conflicted with the laws of that State. Before doing so, however, we observe that the settled principles which we have applied in determining whether the controversy was governed by the Massachusetts law clearly make manifest how inseparably what constitutes the giving of full faith and credit to the Massachusetts judgment is involved in the consideration of the application of the laws of that State and therefore, as we have previously stated, how necessarily the express assertion of the existence of a right under the Constitution of the United States to full faith and credit as to the judgment was the exact equivalent of the assertion of a claim of right under the Constitution of the United States to the application of the laws of the State of Massachusetts. We say this because if the laws of Massachusetts were not applicable, the full faith and credit due to the judgment would require only its enforcement to the extent that it constituted the thing adjudged as between the parties to the record in the ordinary sense, and on the other hand, if the Massachusetts law applies, the full faith and credit due to the judgment additionally exacts that the right of the corporation to stand in judgment as to all members as to controversies concerning the power and duty to levy assessments must be recognized, the duty to give effect to the judgment in such case being substantially the same as the duty to enforce the judgment.

Additionally, before coming to dispose of the final question it is necessary to say that in considering it in view of the fact that the Appellate Division treated the Massachusetts judgment as in the record and considered it, and that the court below made no reference to its technical inadmissibility, but on the contrary treated the question as being one not of admissibility but of merits, we shall pursue the same course and treat the judgment as in the record upon the hypothesis that the action of the trial

VOL. CCXXXVII—35

court did not amount to its technical exclusion but only
to a ruling that as it deemed the law of Massachusetts
inapplicable it so considered the judgment, and therefore
held it merely irrelevant to the merits.

Coming then to give full faith and credit to the Mas-
sachusetts charter of the corporation and to the laws of
that State to determine the powers of the corporation and
the rights and duties of its members, there is no room for
doubt that the amendment to the by-laws was valid if we
accept, as we do, the significance of the charter and of the
Massachusetts law applicable to it as announced by the
Supreme Judicial Court of Massachusetts in the *Reynolds
Case.* And this conclusion does not require us to consider
whether the judgment *per se* as between the parties, was
not conclusive in view of the fact that the corporation for
the purposes of the controversy as to assessments was the
representative of the members. (See *Hartford Life Ins.
Co.* v. *Ibs*, this day decided, *post*, 662.) Into that subject
therefore we do not enter.

Before making the order of reversal we regret that we
must say something more. The printed argument for the
defendant in error is so full of vituperative, unwarranted
and impertinent expressions as to opposing counsel that
we feel we cannot, having due regard to the respect we
entertain for the profession, permit the brief to pass un-
rebuked or to remain upon our files and thus preserve the
evidence of the forgetfulness by one of the members of
this bar of his obvious duty. Indeed, we should have
noticed the matter at once when it came to our attention
after the argument of the case had we not feared that by
doing so delay in the examination of the case and possible
detriment to the parties would result. Following the
precedent established in *Green* v. *Elbert*, 137 U. S. 615,
which we hope we may not again have occasion to apply,
the brief of the defendant in error is ordered to be stricken
from the files and the decree below in accordance with the

views which we have expressed will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*