THRIVENT FINANCIAL FOR
LUTHERANS, Plaintiff,

v.

Scott B. LAKIN, individually in his official capacity as Director, Missouri Department of Insurance, Defendant.

No. 03–0186–CV–W–FJG.

United States District Court,
W.D. Missouri,
Western Division.

June 22, 2004.

Andrew B. Kay, James P. Gillespie, Kirkland & Ellis, Washington, DC, David F. Oliver, Berkowitz, Stanton, Brandt, Williams & Shaw, LLP, Kansas City, MO, for Plaintiff.

Carolyn H. Kerr, Missouri Department of Insurance, Jefferson City, MO, for Defendant.

## ORDER

GAITAN, District Judge.

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 24). Together with said motion are Plaintiff's Suggestions in Support (Doc. No. 25), Defendant's Suggestions in Opposition (Doc. No. 27), Plaintiff's Reply (Doc. No. 28), and all accompanying exhibits and affidavits.

### I. Background.

Thrivent Financial for Lutherans ("Thrivent") is a member-governed, Lutheran fraternal benefit society organized pursuant to Chapter 614 of the Wisconsin statutes, i.e., the Wisconsin Fraternal Code. Thrivent was founded originally as the Aid Association for Lutherans ("AAL") in 1902 by four Lutherans in Appleton, Wisconsin. One hundred years later, on January 1, 2002, AAL merged with Lutheran Brotherhood ("LB"), another Lutheran-based fraternal benefit society, which was organized under Minnesota law. As a result of the merger, LB members and insureds became members and insureds of AAL—and thereby bound by AAL's Bylaws. Following the merger, AAL adopted its current name—Thrivent Financial for Lutherans.

Thrivent is not a commercial insurance company; instead, as authorized under Wisconsin law, it is a not-for-profit organization with a unique structure. *See, e.g.,* Wis. Stat. §§ 614.01 to 614.96; 632.91 to 632.96. Fraternal benefit societies such as Thrivent generally must (a) have a representative form of government, (b) have a system of local lodges, and (c) provide insurance and other benefits to their members. *See, e.g.,* Wis. Stat. § 614.01. Thrivent's purpose is "to associate Lutherans and their families and ... thereby enable them through membership in this fraternal benefit society to aid themselves and others." Thrivent provides insurance and numerous types of other benefits to its members in several ways. Through its members, Thrivent also engages in significant charitable works: in 2002 alone, for example, Thrivent donated over $210 million and over 18.5 million hours in members' time to charitable causes.

As required by Wisconsin law, and as mandated by its Articles of Incorporation and Bylaws, Thrivent is owned by its members and governed by a board of directors, all of whom are also benefit members of the society. The Thrivent membership elects twelve directors by a direct vote; at all times these elective directors must comprise at least a majority of the board. Thus, only Thrivent members are eligible to serve on the Thrivent Board of Directors and to vote in the board of directors election. Currently, sixteen of the eighteen Thrivent Directors are outside directors, not employed by or otherwise affiliated with the Society (except through their membership). Also as required, Thrivent is organized under the lodge system, and is made up of over 1,375 local lodges, called chapters. A person eligible for membership can become a Thrivent member by joining a local chapter.

Wisconsin state law mandates that fraternal societies require their members to be personally responsible if the society's cash reserves become impaired. *See* Wis. Stat. § 614.19(3). As a result, the "Maintenance of Solvency" provision, included in every member's life insurance contract, provides that insureds may be required to make an extra payment or choose an equivalent reduction in benefits in the event there is a deficiency.

The Preface to Thrivent's Articles of Incorporation and Bylaws provides: "Members of the Thrivent Financial for Lutherans Board of Directors, as representatives of all members of the society, use the articles and bylaws to make decisions about corporate objectives, policies and strategy." In 1999, AAL's Board of Directors unanimously approved an amendment of Section 12 of AAL's Bylaws implementing the Member Dispute Resolution Program ("MDRP"). The MDRP requires mediation and, if necessary, binding, mandatory arbitration for any member disputes with AAL. As required by Wisconsin law, *see* Wis. Stat. § 614.12(4), AAL filed its amended Bylaws with the Wisconsin Commission of Insurance. The Wisconsin Commissioner did not disapprove AAL's arbitration Bylaw, and the Commissioner duly has approved 15 AAL and Thrivent insurance certificates that incorporate the arbitration requirement. AAL amended Section 12 in May 2000 and in December 2002 (as Thrivent), and duly notified its members and regulators of the amendments each time. The December 2002 MDRP Bylaw is at issue in this case.

Thrivent's MDRP provides for a three-step dispute resolution process that seeks to avoid the use of litigation to resolve disputes. The first two steps of this process are appeal and mediation, neither of which are binding upon either the individual or Thrivent if the resolution of the dispute is unsatisfactory to either of them.

If these initial steps are unable to provide a satisfactory resolution to the dispute, the Bylaws provide that "the matter will be resolved by binding arbitration administered by and in accordance with the applicable arbitration rules as prescribed by the American Arbitration Association." Thrivent pays all costs of any resulting mediation and arbitration. With regard to damages and other relief available in arbitration, Section 12 provides that, except as limited therein, "the parties to a dispute may be awarded any and all damages or other relief allowed for the claim in dispute by applicable federal or state law, including attorney's fees and expenses if such attorney's fees and expenses are deemed appropriate under applicable law." The sole limitation in Section 12(f) provides that "[e]xemplary or punitive damages may be awarded for claims arising under applicable federal or state statute(s) or, for claims arising under the common law, exemplary or punitive damages may be awarded but may not exceed three times the amount of compensatory damages." The decision of the arbitrator(s) chosen by the individual and Thrivent is final and binding on both parties.

Defendant Scott B. Lakin is the director of the Missouri Department of Insurance ("MDI"), an executive agency in the state of Missouri. Thrivent possesses a Certificate of Authority to operate as a foreign insurer under chapter 378, RSMo, (Fraternal Benefit Societies) from MDI.

MDI admits that Thrivent's MDRP Bylaw is valid in Wisconsin. More specifically, in a letter sent to Thrivent on September 3, 2002, MDI "recognize[d] that some other states, including AAL's home state of Wisconsin, do not prohibit such pre-dispute mandatory binding arbitration clauses."

In 1999, Thrivent's predecessor, AAL, provided notice to MDI that it had amend-

ed its Bylaws to require binding arbitration. MDI did not object to the MDRP Bylaw at that time. In May 2001, MDI—under a new Director following a change in gubernatorial administrations—informed Thrivent that "[i]t has come to our attention that" the MDRP "results in a conflict between the insurance contract your company issues and Missouri law." MDI asserted R.S.Mo. § 435.350 "declares binding arbitration provisions to be invalid in contracts of insurance," and therefore, "the policies or your bylaws must be modified to resolve this conflict." After substantial discussions between Thrivent and MDI, on January 14, 2003, MDI "propos[ed] that it and AAL file a 'friendly' action ... asking for a declaratory judgment as to whether such a clause is enforceable in Missouri." Thrivent subsequently filed the present lawsuit on March 4, 2003. Thrivent requests the Court (1) enter a declaration that MDI's threatened regulation of Thrivent pursuant to Missouri law violates the Full Faith and Credit Clause of the United States Constitution and is preempted by the Federal Arbitration Act; and (2) enjoin Defendant from taking any action under color of Missouri law that prevents Thrivent from enforcing its dispute resolution Bylaw.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. *Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–590, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is enti-

tled to judgment as a matter of law. *Matsushita,* 475 U.S. at 586–90, 106 S.Ct. 1348.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. *Fed.R.Civ.P. 56(e); Lower Brule Sioux Tribe v. South Dakota,* 104 F.3d 1017, 1021 (8th Cir.1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. *Lower Brule,* 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. *Id.* Rather, "the disputes must be outcome determinative under prevailing law." *Id.* (citations omitted).

## III. Discussion.

■ The parties to this lawsuit agree that the underlying substantive facts are not in dispute. *See* Doc. Nos. 25, 27, 28. Instead, the parties dispute how the law should apply to the facts in this case. Under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Missouri Child Care Ass'n v. Cross,* 294 F.3d 1034, 1037 (8th Cir.2002).

Here, plaintiff asserts that Director Lakin's attempt to regulate Thrivent under § 435.350 violates the Constitution. Plaintiff argues that defendant should be enjoined from taking any action under color of Missouri law preventing plaintiff from enforcing its dispute resolution Bylaw because: (1) the Full Faith and Credit Clause of the United States Constitution mandates that Thrivent's MDRP Bylaw be evaluated solely under Wisconsin law; (2) even if MDI could regulate plaintiff's

MDRP under Missouri law, MDI's attempted regulation is preempted by federal law; and (3) the McCarran–Ferguson Act does not prevent federal preemption of RSMo § 435.350. Each of plaintiff's arguments will be examined below.

### A. Full Faith and Credit

### 1. Status of Fraternal Benefit Societies

Plaintiff argues that, because of the unique legal status of fraternal benefit societies, plaintiff's MDRP Bylaw should only be evaluated under Wisconsin law. The United States Supreme Court has recognized that fraternal benefit societies have a unique status under the law, differentiating said societies from commercial insurers. *See Modern Woodmen v. Mixer,* 267 U.S. 544, 551, 45 S.Ct. 389, 69 L.Ed. 783 (1925) (finding that "[t]he act of becoming a member [of a fraternal benefit society] is something more than a contract, it is entering into a complex and abiding relation"). *See also Order of United Commercial Travelers v. Wolfe,* 331 U.S. 586, 606, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947) ("The fact of membership in ... [a] fraternal benefit society is the controlling and central feature of the relationship.... [T]he terms of ... membership, including obligations and benefits relating to the insurance funds of the society, are subject to change without his individual consent. The control over those terms is vested by [the member] and his fellow members in the elected representative government of the society."); *Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 806 (7th Cir. 2003)(same); *Lulloff v. Thrivent Fin. for Lutherans,* No. 02–CV–3887, 2003 WL 22717879, at *3 (Wis.Cir. Oct. 29, 2003)(same).

As mentioned above, the Wisconsin fraternal code (and, for that matter, the Missouri fraternal code) mandate that a fraternal benefit society (1) be a not-for-profit organization; (2) be conducted solely for the benefit of its members and beneficiaries; (3) be operated on a lodge system; and (4) have a representative form of government. *See* Wis. Stat. §§ 614.01 to 614.96, 632.91 to 632.96; Mo. Stat. Ann. §§ 378.601 *et seq.* Additionally, Missouri exempts fraternal benefit societies from other sections of the state's Insurance Code, except for provisions that are expressly made applicable to fraternal benefit societies. *See* Mo. Stat. Ann. § 378.623 (providing, in part, "[fraternal benefit] societies shall be governed by this chapter and shall be exempt from all other provisions. of the insurance laws of this state, except chapters 374 and 375, RSMo, not only in governmental relations with this state, but for every other purpose, and no law hereafter enacted shall apply to them, unless expressly designated therein.")

### 2. The Supreme Court's Precedents regarding Full Faith and Credit

As plaintiff points out, there is a long line of Supreme Court precedent establishing that the law of the domicile of a society should be used in evaluating the construction and validity of the bylaws in fraternal benefit societies' contracts. *See Order of United Commercial Travelers v. Wolfe,* 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947); *Sovereign Camp, W.O.W. v. Bolin,* 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45 (1938); *Modern Woodmen v. Mixer,* 267 U.S. 544, 45 S.Ct. 389, 69 L.Ed. 783 (1925); *Supreme Council of the Royal Arcanum v. Green,* 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089 (1915). For instance, in *Modern Woodmen,* Justice Holmes wrote:

The indivisible unity between the members of a corporation of this kind in respect of the fund from which their rights are to be enforced and the consequence that their rights must be determined by a single law, is elaborated in [*Supreme Council* ]. The act of becoming a member is something more than a

contract, it is entering into a complex and abiding relation, and as marriage looks to domicile, membership looks to and must be governed by the law of the State granting the incorporation. We need not consider what other States may refuse to do, but we deem it established that they cannot attach to membership rights against the Company that are refused by the law of the domicile.

267 U.S. at 551, 45 S.Ct. 389.

In *Wolfe*, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947), the Supreme Court found that the South Dakota courts were required by the Full Faith and Credit Clause to honor the society's bylaws as interpreted by the laws of Ohio (the state of domicile of the fraternal benefit society), because "[i]f full faith and credit are not given to these provisions, the mutual rights and obligations of the members of such societies are left subject to the control of each state. They become unpredictable and almost inevitably unequal." *Id.* at 592, 67 S.Ct. 1355. The Supreme Court went on to say:

> This court consistently has upheld, on the basis of evaluated public policy, the law of the state of incorporation of a fraternal benefit society as the law that should control the validity of the terms of membership in that corporation.... There would be little sound public policy in permitting the courts of South Dakota to recognize an action to collect the full benefits to be derived from a membership in the petitioner society, while, at the same time, nullifying other integral terms of that same membership which limit certain rights of beneficiaries to enforce collection of such benefits. It is of the essence of the full faith and credit clause that, if a state gives some faith and credit to the public acts of another state by permitting its own citizens to become members of, and benefit from, fraternal benefit societies organized by such other state, then it must give full

faith and credit to those public acts and must recognize the burdens and limitations which are inherent in such memberships.

*Id.* at 624–25, 67 S.Ct. 1355.

Plaintiff notes that a federal court sitting in Wisconsin and applying Wisconsin law has found plaintiff's MDRP Bylaw to be valid. *See Hawkins v. Aid Ass'n for Lutherans*, No. 00–C–1327, 2001 WL 34388865, at *10–11 (E.D.Wis. Oct. 31, 2001), *aff'd*, 338 F.3d 801 (7th Cir.2003). Furthermore, a Wisconsin state court has reached the same conclusion. *Lulloff v. Thrivent Fin. for Lutherans*, No. 02–CV–3887, 2003 WL 22717879, at *3 (Wis.Cir. Oct. 29, 2003). Therefore, plaintiff argues that the State of Missouri must be required to give full faith and credit to the MDRP Bylaw provisions because they are proper under Wisconsin law.

■ Defendant, on the other hand, notes that if the Court accepted plaintiff's interpretation of the Supreme Court's Full Faith and Credit jurisprudence, defendant and other state's departments of insurance would have no authority to regulate Thrivent or other fraternal benefit societies as long as said societies complied with the laws of their home states. All of the cases cited by plaintiff in which other courts have found that plaintiff's MDRP Bylaw must be given full faith and credit are cases in which the party adverse to plaintiff was a *policyholder or beneficiary*. Defendant, the director of the Missouri Department of Insurance, stands in a different place than a policyholder. Defendant asserts, and this Court agrees, that the regulations of the state of Missouri give defendant the power to regulate insurance ·companies, including fraternal benefit societies, doing business within its borders. *See* RSMo §§ 375.012 and 375.158. Furthermore, this Court notes that the Supreme Court in *Wolfe* implicitly

acknowledged that state departments of insurance are not foreclosed from regulating fraternal benefit societies doing business within their states. *See* 331 U.S. at 612, 624–25, 67 S.Ct. 1355 (emphasizing that the Ohio fraternal benefit society was licensed in South Dakota with no apparent objection from the South Dakota department of insurance). *See also id.* at 632, 67 S.Ct. 1355 (J. Black, dissenting), stating:

> Today's opinion does imply, however, that South Dakota officials could have excluded this corporation from doing business in the state or could have revoked its license upon discovery of the foreign corporation's violation of the laws of the state. I cannot believe that the full faith and credit clause stays the hands of the state courts as instruments of state power in private litigation any more than it could forestall state authorities from revoking the association's license for persisting in making unlawful contracts.

The Court agrees with defendants that nothing in the full faith and credit cases cited by plaintiff would prevent defendant MDI from declining a fraternal benefit societies' application for a certificate of authority to do business in Missouri, or otherwise regulating fraternal benefit societies. The Court does not believe it would be proper to extend the Supreme Court's Full Faith and Credit decisions as recommended by plaintiff, especially given the implicit findings in *Wolfe*, cited above. Therefore, plaintiff's motion for summary judgment is **DENIED** as it relates to the Full Faith and Credit issue.

### B. Preemption of Missouri law by the Federal Arbitration Act

Plaintiff further argues that the defendant cannot regulate the MDRP Bylaw because the Missouri legislature has not enacted any law prohibiting a fraternal benefit society from including such mandatory arbitration procedures in its life in-

surance policies, and in the absence of an express statutory limitation, the McCarran–Ferguson act cannot act as a shield to defendant's ad hoc enforcement of its policies.

### 1. Application of RSMo § 435.350

Defendant has asserted that the MDRP Bylaw is invalid under RSMo § 435.350. Section 435.350 provides "A written agreement to submit any existing controversy to arbitration or a provision in a written contract, *except contracts of insurance* and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added). This Court has previously held that the Missouri legislature enacted § 435.350 for the purpose of regulating insurance. *See Standard Security Life Insurance Co. v. West*, 127 F.Supp.2d 1064, 1066–67 (W.D.Mo.2000)(J., Laughrey).

However, plaintiff states that Missouri's Fraternal Code exempts fraternal benefit societies from all Missouri insurance laws, except: 1) the laws of Chapter 378 (the fraternal code itself); 2) the laws of Chapters 374 and 375; and 3) those laws later enacted that are "expressly designated" as applying to fraternals. *See* RSMo § 378.623. Because § 435.350 falls under none of the exceptions to the general rule, plaintiff believes it should be exempt from the provisions of § 435.350.

Defendant, on the other hand, argues that RSMo § 435.350 should be applied to fraternal benefit societies because RSMo § 378.619.6 provides that life insurance contracts issued by fraternal benefit societies "shall meet the standard contract provision requirements not inconsistent with this chapter [378] for like policies issued by life insurers in this state." De-

fendant also states that the provisions of Chapter 376, RSMo (which governs life insurance contracts) should be applied to fraternal benefit societies. Defendant states that "[e]ven though chapter 376, RSMo, § 435.350, RSMo, and title 20 of the Missouri CSR are not specifically enumerated in the list of applicable laws governing fraternal benefit societies, those statutes and regulations must, nonetheless, be referred to as applicable to fraternal benefit societies operating in Missouri." *See* Doc. No. 27, p. 8.

 Plaintiff responds to defendant's argument by stating that if defendant was allowed to apply § 435.350 to fraternal benefit societies, § 378.623 would be gutted of all meaning, and that "[i]t is no exaggeration to say that under MDI's interpretation of Missouri law, every statute that applies to conventional insurers would apply equally to fraternal benefit societies." *See* Doc. No. 28, p. 13. This Court agrees with plaintiff. Courts should not interpret statutes in a manner that would render language superfluous or irrelevant. *See Beck v. Prupis*, 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). If defendant wishes § 435.350 to apply to fraternal benefit societies, defendant should take this issue to the Missouri legislature, not to the courts.

### 2. Defendant's general regulatory powers

 Because RSMo § 435.350 does not apply to fraternal benefit societies, any regulation by defendant must be based upon a policy or opinion of defendant (not a state law). Although the McCarran–Ferguson Act[1] provides that state *laws* regulating the business of insurance are not preempted by federal law in some circumstances, the McCarran–Ferguson Act does not insulate a State's regulatory stance or opinion from preemption. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir.2002) (providing that where no Mississippi statute barred arbitration of insurance disputes, McCarran–Ferguson would not apply, reasoning that McCarran–Ferguson "bars application of the FAA to insurance contracts only in the context of a **state statute** evincing the same, not mere policy statements of state officials of administrative rule interpretations of governmental entities." (Emphasis in original)).

██ ██ Without McCarran–Ferguson reverse-preemption, the Federal Arbitration Act ("FAA") would come into play. The FAA "is a congressional declaration of a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Because of the strong public policy evinced in the FAA supporting arbitration and the lack of any applicable state law to the contrary, this Court believes that MDI does not have the authority to invalidate the arbitration agreement found in plaintiff's Bylaw. Therefore, plaintiff's motion for summary judgment is **GRANTED** as it relates to the issue of preemption of MDI's regulatory stance by the federal arbitration act.

### C. Section 435.350 and McCarran–Ferguson Act Reverse Preemption

Plaintiff also asks the Court to consider whether, if RSMo § 435.350 was found to be applicable to fraternal benefit societies, the McCarran–Ferguson Act should pro-

---

**1.** *See* 15 U.S.C. § 1012(b)("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...." (Emphasis added)).

tect § 435.350 from being preempted by the FAA. Because the Court has already determined that RSMo § 435.350 is *not* applicable to fraternal benefit societies, the Court does not reach this issue.

Accordingly, for the above stated reasons, it is hereby ORDERED that:

1) Plaintiff's Motion for Summary Judgment (Doc. No. 24) is DENIED IN PART as it relates to the Full Faith and Credit Clause and GRANTED IN PART as it relates to preemption of defendant's regulatory opinions by the Federal Arbitration Act;

2) Defendant's threatened regulation of plaintiff pursuant to Missouri law is preempted by the Federal Arbitration Act; and

3) Defendant is enjoined from taking any action under color of Missouri law that prevents plaintiff from enforcing its dispute resolution Bylaw.