**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30405

WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY/OMAHA
WOODMEN LIFE INSURANCE SOCIETY

Plaintiff-Appellant

v.

JRY, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF
HIS MINOR SON, ON BEHALF OF BMY ESTATE; TSY, MOTHER OF BMY

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
(6:08-CV-46)

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Plaintiff-appellant, Woodmen of the World Life Insurance Society/Omaha Woodmen Life Insurance Society (the Society), appeals the denial of its motion to compel arbitration and to stay ongoing state proceedings pending arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3, 4. Because we find that the parties' underlying dispute arguably falls within the scope of the

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arbitration clause at issue in this case, we reverse and remand with instructions to the district court to grant the motion to compel arbitration and to stay the state proceedings.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of a motion to compel arbitration under 9 U.S.C. § 4 as well as the denial of a motion to stay a proceeding pending arbitration under 9 U.S.C. § 3. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 (5th Cir. 2006).

## FACTS AND PROCEEDINGS BELOW

The Society is a non-profit "fraternal benefit society" that, in addition to offering life insurance coverage, also provides a number of ancillary privileges and benefits to its members, including access to Woodmen facilities and activities. It is organized under Nebraska law and licensed to do business in Louisiana and many other states.[1] T.S.Y. applied to the Society for a life insurance policy on behalf of her minor son, B.M.Y., who was accepted by the Society and issued a Certificate of Insurance (Certificate), which initiated B.M.Y.'s insurance coverage as well as bringing about his membership in the Society. The Certificate incorporates by reference the Articles of Incorporation and the Constitution and Laws of Woodmen, which in conjunction with the terms of the Certificate define the contractual relationship between members and the Society. This case centers upon the scope of a broadly worded provision in the Woodmen Constitution, discussed in detail below, that requires

---

[1]Subpart J of the Louisiana Insurance Code, entitled "Fraternal Benefit Societies," defines a "fraternal benefit society" as "any incorporated society, order, or supreme lodge . . . conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which provides benefits in accordance with this Subpart." La. R.S. 22:281.

2

arbitration to resolve individual disputes between members and the Society.

Membership in the Society afforded B.M.Y. access to a Woodmen youth camp in Vermillion Parish, Louisiana. Absent his membership in the Society by virtue of the Certificate, he would not have been eligible to attend the camp. While attending the camp there, he was allegedly sexually assaulted by some of his fellow campers. J.R.Y. and T.S.Y (the father and mother of the minor B.M.Y.), individually and on behalf of B.M.Y.'s estate, sued the Society in Louisiana state court alleging that camp staff were negligent in failing to properly supervise the campers. J.R.Y., T.S.Y. and B.M.Y. are all resident citizens of Louisiana. The Society then brought the instant suit in the United States District Court for the Western District of Louisiana by filing a motion to compel arbitration and a motion for a temporary restraining order to stay the state court proceedings pending arbitration pursuant to the FAA, 9 U.S.C. §§ 3, 4. In response, appellees (J.R.Y. and T.S.Y.) filed a FED. R. CIV. P. 12(b)(6) motion to dismiss, arguing that their tort claims were not covered by the arbitration agreement. The district court held that the dispute fell outside the scope of the arbitration agreement. Therefore the court denied the Society's motion for a temporary restraining order, declared the motion to compel arbitration moot, and granted appellees' motion to dismiss. The Society now appeals.

## DISCUSSION

The Society primarily asserts that the district court erred in concluding that appellees' tort claims were not covered by the arbitration agreement. However, before we consider the scope of the arbitration agreement, we first address appellees' argument that the arbitration clause is "reverse preempted" by the Louisiana Insurance Code.

*I. Reverse Preemption*

3

For the first time on this appeal, appellees contend that, pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, the Louisiana Insurance Code reverse preempts the FAA and renders the arbitration clause void and unenforceable. Although federal law normally preempts conflicting state law, the McCarran-Ferguson Act creates a limited exception for state statutes regulating the insurance industry. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006). The McCarran-Ferguson Act states in relevant part that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). La. R.S. 22:868 provides in pertinent part as follows:

> "A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement:
> ***
> (2) Depriving the courts of this state of the jurisdiction of action against the insurer.
> ***
> C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract."

Appellees further point out that "Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer." *Hobbs v. IGF Ins. Co.*, 834 So.2d 1069, 1071 (La. Ct. App. 3d Cir. 2002), *writ denied*, 836 So.2d 71 (La. 2003).

Ordinarily, a party waives any argument on appeal that was not raised in

the district court. *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000); *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 313 & n.37 (5th Cir. 2005). We have recognized an exception to this general rule where "[w]e will consider an issue raised for the first time on appeal . . . if it is a purely legal one and if consideration is necessary to avoid a miscarriage of justice." *Langhoff Props., LLC v. BP Prods. N. Am., Inc.*, 519 F.3d 256, 261 n.12 (5th Cir. 2008). Although appellees do raise a purely legal issue, we do not find that refusing to consider their reverse preemption argument here will result in a miscarriage of justice necessitating a departure from the general rule.

First of all, as a fraternal benefit society, the Society is specifically excluded from the Louisiana Insurance Code's definition of an "insurer," which includes "every person engaged in the business of making contracts of insurance, *other than a fraternal benefit society*." La. R.S. 22:46(10) (emphasis added). This suggests that appellees' suit against the Society is not an action against an "insurer" within the meaning of La. R.S. 22:868(A)(2). Moreover, Subpart J of the Louisiana Insurance Code, entitled "Fraternal Benefit Societies," specifically exempts fraternal benefit societies such as the Society from the majority of the state's insurance laws: "Except as herein provided, societies shall be governed by this Subpart and shall be exempt from all other provisions of the insurance laws of this state unless they be expressly designated therein, or unless it is specifically made applicable by this Subpart." La. R.S. 22:303.

Although La. R.S. 22:868 does not expressly include fraternal benefit societies within its scope, appellees contend, for the first time at oral argument, that Subpart J specifically makes that provision applicable to fraternal benefit societies. Appellees, for the first time at oral argument, cite to La. R.S. 22:299(F), which governs benefit contracts issued by fraternal benefit societies and provides in relevant part as follows: "Every life . . . insurance certificate . .

. shall meet the standard contract provision requirements not inconsistent with the Subpart [J] for like policies issued by life insurers in this state." La. R.S. 22:868 is located within Chapter 4 of the Louisiana Insurance Code, which lays out the "Insurance Contract Requirements" for all insurers in the state, including life insurers.[2] Therefore, appellees contend that the "standard contract provision requirements" in Chapter 4 that do not conflict with Subpart J, including La. R.S. 22:868, are applicable to fraternal benefit societies such as the Society.

Appellees cite no caselaw, from Louisiana or otherwise, in support of this argument. We are aware of only one district court case addressing a similar claim brought under a nearly identical set of Missouri statutes. *Thrivent Fin. for Lutherans v. Lakin*, 322 F. Supp. 2d 1017, 1023–24 (W.D. Mo. 2004). In *Thrivent*, the Missouri Department of Insurance (MDI) contended that a Missouri anti-arbitration statute applied to a fraternal benefit society, despite a provision in the Missouri Insurance Code exempting such organizations from the general insurance laws of the state. *Id.* MDI relied on a provision in the Missouri "fraternal code" similar to the statute cited by appellees in the instant case, which required that insurance contracts issued by fraternal benefit societies "meet the standard contract provision requirements not inconsistent with this chapter . . . for like policies issued by life insurers in this state." *Id.* at 1023 (quoting R.S. Mo. § 378.619(6)). Although facially appealing, this argument was ultimately rejected by the district court, which concluded that to embrace MDI's reading of the statute would undermine the unique status afforded fraternal benefit societies under Missouri law and render the exemption

---

[2]Specifically, La. R.S. 22:868 is contained within Chapter 4 of the Louisiana Insurance Code ("Insurance and Insurance Contract Requirements by Type of Insurance"), Part I ("Insurance and Policy Requirements in General").

provision "superfluous or irrelevant." *Id*. at 1024.

The court's analysis in *Thrivent* is persuasive in many respects and it is reasonably arguable that it applies equally to the above referenced Louisiana laws. When the Louisiana Legislature drafted a separate subpart of its Insurance Code for fraternal benefit societies and exempted them from the general insurance laws of the state, the Legislature seems to have recognized that those organizations were unique and should be governed by a different set of rules than ordinary insurance companies. Moreover, it appears that the Legislature drafted La. R.S. 22:868 with the intent of prohibiting insurance companies from compelling the arbitration of insurance claims made by policy holders. The dispute before us is not a claim for recovery on the insurance policy and does not depend so much on B.M.Y.'s life insurance policy as it does on his membership agreement as a Woodman. Therefore, the public policy concerns underpinning La. R.S. 22:868 are not strongly implicated in this case.

We accordingly conclude that the circumstances here are not such as to merit our departure from the general rule prohibiting us from considering new arguments first raised on appeal. *See Carillo v. La. Ins. Guar. Ass'n*, No. 08-30359, slip op. 1574 at 1580, ____ F.3d ____ (5th Cir. Feb. 19, 2009). Therefore, we determine that, because appellees failed to raise their reverse preemption argument in the district court, they have waived that defense.

II. *Scope of the Arbitration Clause*

The Society claims that the district court erred in determining that appellees' tort claims fall outside the scope of the arbitration agreement. We find that, because the claims are arguably covered under the language of the agreement, we must err on the side of arbitration.

In considering whether to compel arbitration under the FAA, a court must engage in a two-step analysis. *Tittle*, 463 F.3d at 418. "First, a court must

'determine whether the parties agreed to arbitrate the dispute in question.'" *Id.* (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). "Second, a court must determine 'whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 105 S.Ct. 3346, 3355 (1985)). Other than the improperly raised reverse preemption argument, appellees offer no external legal constraints that would preclude enforcement of the agreement. Therefore, our analysis is limited to deciding whether the parties agreed to arbitrate this dispute, which requires us to determine: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *Webb*, 89 F.3d at 258).

Appellees (other than by their reverse preemption argument first raised on appeal) do not challenge the validity of the arbitration agreement, and therefore we only consider whether it encompasses their tort claims. In determining the scope of an arbitration agreement, we focus primarily on the contract itself and not "general policy goals." *EEOC v. Waffle House, Inc.*, 122 S.Ct. 754, 764 (2002). Nevertheless, the federal presumption in favor of arbitration does come into play to the extent that "ambiguities in the language of the agreement should be resolved in favor of arbitration." *Id.*; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 106 S.Ct. 1415, 1419 (1986). Thus, "[w]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (quoting *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)).

The arbitration agreement at issue, which is contained in the Woodmen Constitution and incorporated by reference in B.M.Y.'s Certificate, provides in pertinent part as follows:

> "**Sec. 2.  Resolution of Individual Disputes**
>    **(a) Purpose.**  The purpose of this Section 2 is to provide opportunities for members . . . and the Society to be promptly heard and to seek fair resolution of any disputes regarding any individual rights or individual interests they have or claim to have as members . . . of the Society and without the delay and expense of formal legal proceedings.
>    **(b)  Scope.**  This Section 2 shall apply whenever a member . . . makes a claim for damages, or claims any form of redress for a violation of his or her individual rights or a denial of individual privileges or benefits which he or she claims as a member. . . .  This includes, but is not limited to, disputes involving alleged fraud, misrepresentation, discrimination, denial of civil rights, conspiracy, defamation, or infliction of distress by the Society or any officer, employee or agent of the Society."

Appellees argue that the agreement only governs disputes relating to rights, privileges, or benefits enjoyed by an individual as a member of the Society. Appellees claim that, because the right to have proper supervision at the camp was not in any way linked to membership in the Society, their suit falls outside the scope of the arbitration clause.  In contrast, the Society asserts that the agreement covers *any* claim at all for damages brought by *a member* against the Society.  Further, the Society argues that attendance at the Society camp was an *exclusive privilege* that B.M.Y. was *only* able to enjoy by virtue of his *membership in the Society*.  Therefore, any alleged violation of "individual rights," "denial of civil rights," or "infliction of distress" by Society camp staff stemmed directly from B.M.Y.'s membership in the Society and therefore is covered under the arbitration agreement.

While we do not believe that the scope of the arbitration clause is so broad

as to cover any conceivable dispute between a member and the Society,[3] we find that it is at least "fairly debatable" that appellees' claims fall within the bounds of the agreement. *See In re Hornbeck*, 981 F.2d at 755. B.M.Y. could not have attended the Society's camp if he were not a Woodman. As such, the claims arising from his alleged assault by other campers at the Society's camp he was attending solely by virtue of his membership arise, at least indirectly and not wholly fortuitously, from his membership in the Society. Therefore, the arbitration clause is at a minimum "'susceptible of an interpretation that covers the asserted dispute,'" and we must resolve doubts in favor of coverage. *See AT&T Techs.*, 106 S.Ct. at 1419 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 80 S.Ct. 1347, 1353 (1960)).

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's order granting appellees' FED. R. CIV. P. 12(b)(6) motion and denying the Society's motions. Further, we REMAND the case to the district court with instructions to grant the Society's motion to compel arbitration and to stay the state proceedings pending arbitration.

REVERSED AND REMANDED.

---

[3]Consider, for example, an automobile collision between a Society vehicle and a non-Society vehicle driven by a non-Society member in which B.M.Y. is a passenger and the presence of which on the occasion in question is wholly unrelated to anything in connection with or arising out of B.M.Y.'s membership.