Glennis M. ANGLIN, Individually and on Behalf of all others Similarly Situated, Plaintiff

v.

TOWER LOAN OF MISSISSIPPI, INC., Defendant.

Civil Action No. 3:09CV29TSL–JCS.

United States District Court, S.D. Mississippi, Jackson Division.

June 4, 2009.

John G. Clark, Kerley & Clark, Pascagoula, MS, Wynn E. Clark, Wynn E. Clark, Attorney, Gulfport, MS, Lisa N. Frascogna, Frascogna & Frascogna, PLLC, Jackson, MS, for Plaintiff.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Tower Loan of Mississippi, Inc. (Tower) to compel arbitration pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Plaintiff Glennis M. Anglin, Jr. has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff, a former customer of Tower, brought this action under the Fair Credit Reporting Act, as amended by the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 *et seq.* (FCRA), alleging that for years after his customer relationship with Tower ended, Tower improperly obtained unauthorized consumer credit reports on plaintiff, falsely representing they were for "account review purposes," notwithstanding that plaintiff did not have an existing account with Tower at the time the reports were obtained. Plaintiff further alleged a "regular marketing practice" on the part of Tower to falsely represent previous borrowers to be current, and sought certification of a class of previous borrowers as to whom within the past five years Tower had obtained a consumer report for "account review" purposes after the consumer relationship between Tower and the borrower had terminated.

Tower has moved to compel arbitration of plaintiff's claims pursuant to an arbitration agreement executed by plaintiff in connection with his 2002 loan from defendant by which the parties agreed to arbitrate "all claims and disputes between" them, including but not limited to

> all claims arising out of, in connection with, or relating to:
>
> ● The loan Borrower is obtaining from Lender today and any other loans or retail installment contracts with Lender;
>
>   . . . .
>
> ● All claims or disputes based upon Federal or State laws or regulations; and
>
> ● Claims or disputes involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, and demands for punitive damages or attorney's fees.
>
>   . . . .
>
> (7) This arbitration provision or agreement applies even if Borrower's loan(s) have been paid in full, have been charged off or discharged in bankruptcy.
>
>   . . . .
>
> (11) Borrower and Lender agree that arbitration proceedings between them shall not be combined or consolidated with any disputes or proceedings with other borrowers.[1]

Plaintiff has responded, opposing the motion on four bases. He argues that the arbitration agreement, by its terms, does not apply to his claim because it is for less than $5,000; that his claims do not fall

---

1. Tower has not produced the arbitration agreement signed by plaintiff because it has been unable to locate that document. However, an affidavit from Michael Betts accompanying Tower's motion establishes that every Tower borrower was required to execute Tower's then standard form of Arbitration Agreement, failing which there would have been no loan. For his part, plaintiff does not deny he signed such an agreement. And, as Tower notes, the fact that the arbitration agreement has been lost or destroyed does not prevent its enforcement. *See Banks v. Mitsubishi Motors Credit of America, Inc.,* 435 F.3d 538, 539–40 (5th Cir.2005).

within the scope of the arbitration agreement because they do not relate to his loan with Tower and instead rely on duties under the FCRA which exist irrespective of the expired contracts that contain the subject arbitration clause; that in any event, the arbitration agreement is unenforceable due to the class action waiver provision therein, because its enforcement would effectively render the class of plaintiffs without a remedy for their "negative value" claims; and that the arbitration is unconscionable and hence unenforceable. In the court's opinion, none of these arguments has merit.

■ In considering whether to compel arbitration under the FAA, a court must engage in a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). "First, a court must 'determine whether the parties agreed to arbitrate the dispute in question.'" *Id.* (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996)). "Second, a court must determine 'whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

■ The parties' arbitration agreement in the case at bar provides that "[n]either party shall be required to arbitrate claims or matters wherein the total amount at issue or in dispute (including punitive damages) is less than $5,000.00." Plaintiff notes that the applicable damages provisions of FCRA allow for actual damages of not more than $1,000, together with attorney's fees and costs, and he argues that in view of this limitation, his claim does not meet the $5,000 threshold minimum for arbitration under the arbitration agreement. Plaintiff acknowledges that the statute allows for the recovery of attorney's fees, but submits that even taking attorney's fees into account, his claim still falls below the $5,000 threshold for arbitration, since only an award of 400 percent of the damages award (assuming a $1,000 award) would bring the amount of plaintiff's potential recovery up to $5,000. The court rejects plaintiff's position.

■ In his complaint, plaintiff purports to seek an award of "statutory damages as provided by § 1681n(a)." The damages for which the statute provides include not only actual damages of up to $1,000, but also *punitive damages,* along with attorney's fees and costs. Furthermore, as defendant notes in its reply, a determination of the amount of attorney's fees to be awarded for a successful plaintiff under this section is determined by reference to the *Johnson* factors, which take into account first and foremost the time reasonably expended and the attorney's customary hourly rate. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir.1982); *Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714 (5th Cir.1974). And significantly, there is no requirement that an award of attorney's fees under the FCRA be proportional to the amount of the plaintiff's recovery. *See Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 974 (4th Cir.1987) ("Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.") (citing *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986)). In this case, the court has little doubt that if plaintiff were successful in the prosecution of his claim, his attorneys' fees request would far exceed $4,000. Thus, plaintiff's claim is obviously for more than $5,000.

■ Plaintiff next argues that the arbitration agreement does not apply to his claim herein because it is not related to his loan with Tower. The Fifth Circuit has mandated a broad reading of the phrase "relating to" in an arbitration context, *DeStephano v. Broadwing Communications, Inc.*, 48 Fed.Appx. 103, 2002 WL 31016599, 6–7 (5th Cir. Aug. 20, 2002) (citing *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir.2002)), and holds that with such a broad arbitration clause, "it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998). Here, plaintiff reasons that the whole point of his claim against Tower in this case is that he had no existing loan agreement or relationship with Tower when it obtained his credit report by falsely representing that it was obtaining the report for "account review" purposes and that consequently, it is apparent that his claim is not "related to" the loan agreement. He acknowledges that his complaint refers to his earlier loan from Tower; but he contends that this reference in the complaint to his loan contract was merely to demonstrate that at the time that Tower unlawfully conducted its account reviews, plaintiff *did not have any existing account with Tower* to justify the purported "account review." Plaintiff submits that the fact that it would have been unlawful for Tower to obtain an account review consumer report even if it had never had a loan agreement with plaintiff highlights the immateriality of his previous relationship with Tower to his claim in this case. That is to say, he reasons that his claim in this case would be the same if he had never had a loan agreement/customer relationship with Tower, from which it follows that the fact of his previous loan/contractual relationship is unrelated to his claim herein.

Tower's position, however, as the court perceives it, is that the very fact of plaintiff's previous loan with Tower is what gave it the right under the FCRA to obtain plaintiff's credit report. The determinative question in this case would thus seem to be whether the fact that plaintiff had this prior loan agreement with Tower on a loan that has been paid in full and plaintiff's account closed, authorized Tower's subsequent request for plaintiff's credit report. Regardless of what this court's view might be on the correct resolution of this issue, the court recognizes that "[t]here is a difference in opinion on whether … [the] FCRA contains an absolute prohibition against the sale of credit reports to former creditors whose accounts are closed and paid in full." *Levine v. World Fin. Network Nat'l. Bank*, 437 F.3d 1118, 1122 (11th Cir.2006) (citing *Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 476 (5th Cir.2000)) (per curiam) ("[N]either [FCRA] nor the FTC's commentary on [FCRA] suggests that a report may only be permissibly obtained during particular points in the parties' relationship."). The court also recognizes the Fifth Circuit's repeated admonition that in view of the strong national policy favoring arbitration, "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.2002) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)); *see also Woodmen of World Life Ins. Soc./Omaha Woodmen Life Ins. Soc. v. JRY*, 320 Fed.Appx. 216, 220–21 (5th Cir.2009) ("[W]henever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration")(quoting *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir.1993)); *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th

Cir.1990)("[A]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."). The parties here have a broad arbitration agreement, and their present dispute can fairly be said to "touch" the loan agreement. *See Pennzoil*, 139 F.3d at 1067. Accordingly, the court, mindful of its charge to resolve doubts in favor of arbitration, concludes that the present dispute falls within the scope of the arbitration provision.

Plaintiff argues additionally that the class action waiver provision in the subject arbitration agreement renders the agreement unenforceable in a class action asserting "negative value" claims. He contends that since the arbitration agreement, if enforced, would ban him and the putative class members from pursuing their claims as a class action, then the arbitration agreement acts as a practical bar to pursuit of their claims because the potential recovery does not justify the cost of pursuit of individual actions. In support of his position, plaintiff relies on the Supreme Court's opinion in *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), and a number of circuit decisions which he characterizes as holding that anti-class action arbitration provisions are unenforceable when such provisions would act as a practical bar to pursuit of negative value claims, *see In re American Express Merchants' Litigation*, 554 F.3d 300 (2d Cir. 2009); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471, n. 1 (holding that under *Randolph*, a party can avoid Arbitration Agreement by demonstrating that arbitration would be prohibitively expensive); *In*

re *Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 285 (4th Cir.2007).

In *Randolph*, the Supreme Court did not consider whether the arbitration agreement at issue was unenforceable because it precluded class claims; in fact, the Court expressly declined to reach the claimant's argument that the arbitration agreement was unenforceable on the basis that the agreement precluded the claimant from bringing her claims as a class action. *See* 531 U.S. at 92 n. 7, 121 S.Ct. at 523 n. 7. The Court otherwise held that an arbitration agreement might be found unenforceable where the claimant established that the existence of large arbitration costs would preclude her from effectively vindicating her federal statutory rights in the arbitral forum. *Id.* at 92, 121 S.Ct. at 523.[2]

Consistent with the Supreme Court's decision in *Randolph*, the courts that have considered the issue presented have recognized that class action waiver provisions do not render arbitration agreements unenforceable in the absence of proof that the costs to arbitrate the claims individually would make arbitration prohibitively expensive. For example, the court in *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 285 (4th Cir.2007), wrote that while the inability to bring a class action does not in and of itself render an arbitration agreement unenforceable, "if a party could demonstrate that the prohibition on class actions likely would make arbitration prohibitively expensive, such a showing could invalidate an agreement." *Id.* (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir.2002), and *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638–39 (4th Cir.2002)). However, the court found that the arbitration agreement at issue was not unenforceable on this basis be-

---

**2.** On remand, the Eleventh Circuit held that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Randolph v. Green Tree Financial Corp.—Alabama*, 244 F.3d 814, 819 (11th Cir.2001).

cause the plaintiffs had failed to sustain their burden to show that arbitration of their individual claims would be prohibitively expensive, stating,

> The plaintiffs ... developed no evidentiary record below establishing how much it would cost to proceed individually against each defendant or how those increased costs would affect their ability to proceed in arbitration. The absence of an evidentiary record on this issue leaves us with mere speculation about the actual cost of individual proceedings and something little better than a wild guess about the ability of the corporate plaintiffs to bear those speculative costs. This kind of uninformed speculation about cost falls far short of satisfying the plaintiffs' burden of proving that the costs of proceeding individually against the defendants would be prohibitive and thus would prevent them from effectively vindicating their statutory rights. *See Green Tree,* 531 U.S. at 90–91, 121 S.Ct. 513.

*Id.* at 285.

In contrast, the court in *In re American Express Merchants' Litigation,* 554 F.3d 300, 317 (2d Cir.2009), found an arbitration agreement unenforceable due to the presence of a class action waiver provision where the plaintiffs presented substantial evidence it would not be worthwhile for an individual plaintiff to pursue individual arbitration or litigation because the out-of-pocket costs, just for the expert economic study and services each would need to support his claim, would be at least several hundred thousand dollars, and might exceed $1 million, whereas the individual plaintiffs could expect recoveries of only a few thousand dollars. The court thus held that "the class action waiver in the Card Acceptance Agreement [could not] be enforced in this case because to do so would grant Amex de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recov-

ery." *Id.* at 320. The court added a caveat, however, stating:

> [W]e stress that we do not hold here that class action waivers in arbitration agreements are per se unenforceable. We also do not hold that they are per se unenforceable in the context of antitrust actions. Rather, we hold that each case which presents a question of the enforceability of a class action waiver in an arbitration agreement must be considered on its own merits, governed with a healthy regard for the fact that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp.,* 460 U.S. [1] at 24, 103 S.Ct. 927, 74 L.Ed.2d 765 [ (1983) ].

*Id.* at 321.

Plaintiff herein has made no effort to prove the likely cost of arbitration. Instead, he merely argues that the arbitration agreement is unenforceable due to the class action waiver provision because individual claimants are limited in their recovery to actual damages of no more than $1,000. In the court's opinion, however, the availability of attorney's fees and costs, in addition to actual damages and punitive damages, provides adequate incentive for the vindication of plaintiff's his statutory rights. *See Jenkins v. First American Cash Advance of Georgia, LLC,* 400 F.3d 868, 878 (11th Cir.2005) (holding that inclusion of class action waiver in arbitration agreements did not render them substantively unconscionable because precluding class action relief would not have the practical effect of immunizing the defendants since statute under which plaintiffs sued authorized recovery of attorney's fees); *Johnson v. West Suburban Bank,* 225 F.3d 366, 369 (3d Cir.2000) (holding that "[arbitration] clauses are effective even though they may render class actions to pursue statutory claims under the TILA ... unavailable" because the public policy goals

of TILA can be vindicated through arbitration, and the statute contains other incentives-statutory damages and attorney's fees-for bringing TILA claims), *cert. denied sub nom. Johnson v. Tele–Cash, Inc.,* 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001).

■ Plaintiff's alternative argument that the unavailability of the class action device in an arbitral forum renders the arbitration unconscionable as a matter of Mississippi law is patently without merit. First, plaintiff has not shown that the subject provision has the likely effect of barring any recovery for individual plaintiffs. Moreover, as defendant notes, the class action waiver provision cannot be found unconscionable under Mississippi law inasmuch as Mississippi does not even allow the use of the class action device its courts. *See American Bankers Ins. Co. of Fla. v. Booth,* 830 So.2d 1205, 1212 (Miss.2002) ("[T]he rule is that Mississippi does not permit class actions.").

■ Plaintiff finally argues that under Mississippi law, Tower's arbitration provision is void as unconscionable because the arbitration requirement is selectively applied. Plaintiff notes that whereas the agreement requires that he arbitrate any and all claims he may have against Tower (exceeding $5,000), Tower is only required to arbitrate certain claims, as the agreement expressly exempts claims related to payment and seizure of assets from arbitration, providing that "Lender is not required to initiate arbitration proceedings before repossessing collateral or foreclosing upon real property," and further that "When Borrower defaults, Lender can … bring suit for the delinquent payments.…" Contrary to plaintiff's urging, these provisions are not so "lop-sided" as to render the agreement unconscionable and hence unenforceable. The agreement does permit Tower to repossess or foreclose prior to arbitration, in recognition of the rights afforded it in its security agreement. However, the agreement further states that "disputes arising out of or relating to foreclosure or repossession of collateral shall be arbitrated." Moreover, while the security agreement between the parties purports to authorize Tower to file suit for default in payment, its right to do so is limited by the arbitration agreement which provides that "[i]f either party files a lawsuit involving a dispute covered by this agreement, the other party can have the suit stayed and the plaintiff shall be required to arbitrate under this provision." Tower acknowledges that under this provision of the arbitration agreement, if it had commenced a collection action, plaintiff would have the right to insist on arbitration.

For all of the foregoing reasons, the court rejects plaintiff's opposition to Tower's motion to compel arbitration, and therefore orders that Tower's motion to compel arbitration is granted. It is further ordered, pursuant to 9 U.S.C. § 3, that this cause is stayed pending arbitration.